Leon Deryl PINKSTON, Appellant,

v.

The STATE of Texas, State.

No. 2-83-223-CR.

Court of Appeals of Texas, Fort Worth.

Dec. 13, 1984.

Hartley, Eakman, Bodenhamer & Tanner, and James R. Tanner and Glen E. Eakman, Fort Worth, for appellant.

Mac Smith, Dist. Atty., and Dan Carney, Asst. Dist. Atty., Weatherford, for the State.

FENDER, C.J., and ASHWORTH and BURDOCK, JJ.

## OPINION

FENDER, Chief Justice.

Leon Deryl Pinkston, appellant, was convicted by a jury of the offense of unlawful manufacture of a controlled substance, to wit: amphetamine in an amount greater than 400 grams. Appellant elected to have the court assess punishment. Pursuant to the trial court's finding that appellant had two prior felony convictions as alleged in the enhancement paragraphs of the indictment, the court assessed punishment at life imprisonment.

We affirm.

On appeal, appellant raises nine grounds of error in which he contends that (1) evidence of extraneous offenses were improperly admitted at trial; (2) the search warrant and consequent search are invalid; (3) the evidence is insufficient to support the conviction; (4) numerous weapons seized in the search were improperly displayed before the jury; (5) the enhancement paragraphs were not properly proved up, and (6) the Controlled Substances Act, as amended, is unconstitutional. Because appellant challenges the sufficiency of the evidence, a rendition of the facts is necessary.

In November of 1982 an on-going investigation into the illegal manufacture of amphetamine by appellant focused on Parker County, Texas. This investigation was conducted by Sgt. Tom Martin of the Lubbock Police Department assigned to the United States Department of Justice Drug Enforcement Administration Narcotics Task Force in cooperation with investigators and officers of various federal, state, and local law enforcement agencies.

Sgt. Martin and other law enforcement officers arrived in Parker County from Lubbock on December 3, 1982 and established surveillance on appellant's residence, a ranch comprised of approximately 52 heavily wooded acres, located near Millsap. At 7:25 a.m. on the morning of December 5, 1982, a search warrant was executed at the residence with three main areas targeted: a house, a barn, and a mobile home.

The enforcement officers executing the search warrant were divided into three search teams, one team for each building. The barn was located approximately 100 yards from the house and the trailer was located approximately 100 yards from the barn, and approximately 200 yards from the house.

An operating amphetamine laboratory was found in the mobile home along with various beakers, flasks, a large freezer-size bag of amphetamine white powder, numerous bottles and cans of chemicals and various items of laboratory equipment. Arrested in the trailer were Erman Nathan Bullard and a sixteen year old female. Personal items of Bullard and the young female were also found in the trailer.

The appellant, and his wife, Lori Wisdom Pinkston, were arrested in the bedroom of the house where they were asleep. Seven other people were arrested in living room area of the house. Among the items seized in the search of the house were numerous plastic bags containing amphetamine, two plastic bags containing marihuana, four syringes containing a clear liquid, a military amunition box and thirty-seven guns. At the time of his arrest, appellant was in possession of several handwritten notes which included a recipe for making amphetamine, some phone numbers including that of a chemical laboratory supply company in Dallas and the address of a chemical laboratory supply company in Houston.

In his third ground, appellant contends that the evidence is insufficient to connect him to the illegal laboratory because the evidence established that Lori Wisdom Pinkston, not appellant, holds legal title to

the property on which the search was conducted and on which appellant was arrested; and because the evidence failed to show appellant knew of the existence of the illegal laboratory on the property. We find no merit to appellant's argument.

■ In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the jury's verdict and consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State*, 663, S.W.2d 455, 456 (Tex.Crim.App. 1984).

■ We have carefully reviewed the evidence and find it sufficient to connect appellant to the illegal manufacture of the controlled substance. The evidence clearly establishes the existence of laboratory apparatus on appellant's property which was in the process of manufacturing amphetamine. It is irrelevant that legal title to the property is in the name of Lori Wisdom Pinkston, appellant's wife. The evidence establishes that appellant resides on the property with his wife as evidenced by the following facts: (1) appellant, himself, at the time of his arrest, referred to the ranch as his place; (2) appellant's personal papers were found in the desk in the living area; (3) a picture of appellant and his wife was displayed in the den; (4) appellant was found in the bedroom in bed with his wife at the time of the search, and (5) numerous references were made throughout the trial to the ranch as being Pinkston's place without objection. Moreover, the following facts tend to show that appellant was involved in the illegal manufacture of the controlled substance: (1) the illegal laboratory was operating on appellant's property less than 200 yards from his residence; (2) large quantities of amphetamine were found inside appellant's residence; i.e. a locked military ammunition box found behind the desk contained numerous bags of amphetamine and when opened emitted a strong ether smell, an Igloo ice chest found in the living area contained nine clear plastic bags of amphetamine; a clear plastic bag of amphetamine was found in the upper left hand drawer of appellant's desk; and (3) appellant had on his person in his wallet at the time of his arrest handwritten notes which included, inter alia, a chemical formula for manufacturing amphetamine and the addresses of two chemical laboratory supply companies.

We find the circumstantial evidence sufficient to support a conviction for manufacturing amphetamine. Appellant's third ground is overruled.

In his first ground, appellant contends that the trial court erred in overruling his motion for mistrial following the improper admission of evidence of extraneous offenses. Specifically, appellant complains of certain testimony of Tom Martin, a police officer employed by the City of Lubbock, Texas, who, at the time of trial, had been assigned to the United States Department of Justice Drug Enforcement Administration Narcotics Task Force in Lubbock for approximately four years. He testified that in January of 1982 he became involved in an extensive investigation into appellant's activities and that federal, state and local law enforcement agencies were involved in the extensive investigation. The State's attorney attempted to elicit testimony in regard to the extensiveness of the investigation. Appellant complains of the following:

BY MR. MAC SMITH:

Q. Prior to moving into Parker County, Texas where was the investigation taking place?

A. In Lubbock, Texas

Q. Prior to that, where was the investigation taking place:

MR. EAKMAN: Your honor, we're going to object to this investigation taking place somewhere else unless it's connected up with Leon Pinkston in Parker County.

THE COURT: Couch your question—

MR. EAKMAN: Completely outside what we're trying here.

THE COURT: Just couch your questions in the terms of the investigation of Leon Pinkston.

MR. MAC SMITH: Okay, Your Honor, thank you.

BY MR. MAC SMITH:

Q. That's what I was referring to, but let me state it very specifically. Involving the investigation of Leon Pinkston for illegally manufacturing drugs, before it focused on Millsap, Parker County, Texas, where did the investigation involving Leon Pinkston focus in on:

A. Focused in a—in Fort Worth and Tarrant County, Texas.

Q. Okay. Before that, where did the investigation involving Leon Pinkston and his illegal drug activities—where did that investigation focus in before that?

A. In Paris, Texas.

Q. Before that, where did it focus in on Leon Pinkston concerning his illegal drug activities?

A. I'm not aware of where before—

MR. EAKMAN: Your Honor, we're going to object to him saying an investigation. He's trying to give an implication to the jury that they've got some kind of case in these other counties which he knows good and well he's in bad faith. He hasn't filed one of these cases.

THE COURT: Sustain the objection.

MR. EAKMAN: We'll ask the Court to instruct the jury not to consider it whatsoever. It's an extraneous offense.

THE COURT: Jury is so instructed.

MR. EAKMAN: Ask the Court for a mistrial.

THE COURT: Denied.

 It is well settled that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime or for being a criminal generally. *Smith v. State*, 646 S.W.2d 452, 455 (Tex.Crim.App.1983). Accordingly, it has been held that proof of prior specific acts of misconduct, similar happenings or extraneous offenses committed by the accused is not probative of the contested material issues in the case and is inadmissible. *Elkins v. State*, 647 S.W.2d 663, 665 (Tex.Crim.App.1983); *Davis v. State*, 645 S.W.2d 288, 293 (Tex.Crim.App.1983). However, just as is the case in many instances, this general rule is subject to exception, and evidence of extraneous offenses committed by the defendant is admissible as res gestae or to prove identity, intent or knowledge, state of mind, motive, scheme or plan, or to refute a defensive theory. *Mallicote v. State*, 548 S.W.2d 42, 43 (Tex.Crim.App.1977); *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Crim.App.1972); *Grayson v. State*, 481 S.W.2d 859, 862 (Tex.Crim.App.1972). Also, extraneous offenses may become admissible upon a showing that the transaction is *relevant* to a *material* issue in the case, and the probative value of the evidence outweighs its inflammatory or prejudicial potential. *See Rubio v. State*, 607 S.W.2d 498, 506 (Tex. Crim.App.1980) (emphasis in original). When the offense is one continuous transaction, proof of all the facts relating to the transaction is proper as part of the circumstances attending the offense. *Hoffert v. State*, 623 S.W.2d 141, 144 (Tex.Crim.App. 1981).

 It is apparent in the present case that the State was attempting to show the broad scope of the investigation without reference to any specific acts of misconduct or criminal activity. Appellant himself makes reference to possible cases against appellant in other counties in his objection. We do not find that the testimony elicited evidence of extraneous offenses. Moreover, under the circumstances of this case, we hold the testimony was not clearly calculated to inflame the minds of the jury and error, if any, was cured by the instruction to disregard. *Carter v. State*, 614 S.W.2d 821, 825 (Tex.Crim.App.1981); *Thompson v. State*, 612 S.W.2d 925, 928 (Tex.Crim.App.1981). There was no error in denying appellant's motion for mistrial. Appellant's first ground is overruled.

In his second ground of error, appellant contends that the trial court erred in overruling his motion for mistrial based on an

improper question by the State implying the commission of an extraneous offense which occurred immediately after the overruling of the motion for mistrial complained of in his first ground of error. The record reflects the following:

BY MR. MAC SMITH:

Q. Isn't Leon Pinkston currently under indictment in Lubbock County, Texas? He has—

MR. EAKMAN: Your Honor, we're going to object to his as totally an improper question. There's no conviction for felony or misdemeanor crime or moral turpitude and we would ask the Court at this time to declare a mistrial.

MR. CARNEY: Mr. Eakman's previous statement has clearly inferred to the jury that there hadn't been any other cases filed.

THE COURT: I will sustain his objection and instruct the jury to disregard the last question—

MR. EAKMAN: We will ask the Court for a mistrial.

THE COURT: Denied.

 Evidence of appellant's indictment was clearly inadmissible under *Albrecht v. State, supra,* and its progeny; however, we hold the error was cured by the trial court's instruction to the jury to disregard the testimony. Further, the question was invited by the defense attorney's unnecessary referral to cases against appellant in other counties. Appellant's second ground is overruled.

In his fourth ground of error, appellant contends that the search warrant and subsequent search were invalid because the affidavit underlying the search warrant fails to state sufficient probable cause to support issuance of the warrant. We do not agree.

 It is well settled law in Texas that no search warrant may issue unless a sworn affidavit which sets forth sufficient facts to establish probable cause for issuance of the warrant is filed and presented to a magistrate. TEX.CODE CRIM. PROC.ANN., art. 18.01 (Vernon Supp.

1984). This procedure is mandated by the Fourth Amendment to the United States Constitution as made applicable to the States through the Fourteenth Amendment and by Article 1, Section 9 of the Texas Constitution. *See e.g. Aguilar v. State,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Brown v. State,* 617 S.W.2d 196 (Tex.Crim.App.1981), *Tex. v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), 657 S.W.2d 797 (Tex.Crim.App. 1983). Further, no evidence obtained in violation of these foregoing provisions may be admitted in evidence against the accused on the trial of any criminal case. TEX. CODE CRIM.PROC.ANN., art. 38.23 (Vernon 1974).

 An affidavit in support of either a search or arrest warrant must provide the magistrate with sufficient information to support an independent judgment that probable cause exists for the warrant. *Jones v. State,* 568 S.W.2d 847 (Tex.Crim. App.1978), *cert. denied,* 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352 (1978). The facts stated in the affidavit must go beyond a mere suspicion on the part of the affiant. *Ruiz v. State,* 457 S.W.2d 894 (Tex.Crim. App.1970). Further, a search can never be justified by what it produces. *See, e.g. Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

 It is also well established that the facts on which the affiant's belief is based need not be within his personal knowledge. Hence, the affidavit need not reflect the personal observations of the affiant, but may be based on hearsay information. *Jones v. State, supra* at 854. Observations reported to the affiant by other officers engaged in the investigation can constitute a reliable basis for issuing a warrant. *Gish v. State,* 606 S.W.2d 883, 886 (Tex.Crim.App.1980).

 Probable cause exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the property that is the object of the search probably is on the person or premises to be searched at the time the warrant issues.

*Gish v. State, supra* at 886; *Lopez v. State*, 535 S.W.2d 643 (Tex.Crim.App.1976). A magistrate may make reasonable inferences from the facts set forth in the affidavit. *Gish v. State, supra.*

■ In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court criticized the strict application of the *Aguilar-Spinelli* "two-pronged" test for determining whether probable cause exists for issuance of a search warrant and adopted the "totality of the circumstances" approach. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Under the "two pronged" test an affidavit based on hearsay alone to pass constitutional muster had to inform the magistrate (1) of the underlying circumstances from which the informant drew his conclusion and (2) of the underlying circumstances from which the affiant concluded that the informant was "credible" or his information "reliable". The United States Supreme Court in adopting the "totality of the circumstances approach" did not totally reject the "two pronged" test but emphasized that the elements under the "two pronged" test concerning the informant's "veracity", "reliability", and "basis of knowledge" are highly relevant factors in determining the value of an informant's report, but they "should not be understood as entirely separate and independent requirements to be rigidly exacted in every case." *Illinois v. Gates, supra* 103 S.Ct. 2327. The Court went on to rule:

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]'

that probable cause existed.... We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli*." (103 S.Ct. at 2332).

We will determine the validity of the search warrant in the instant case according to the "totality of the circumstances" analysis of *Illinois v. Gates, supra. See Hennessy v. State*, 660 S.W.2d 87 (Tex.Civ. App.1983).

■ In the instant case, the affidavit in question is comprised of a three and one-half page affidavit executed by Officer Randall and expressly incorporates a previous sixty-page affidavit referred to as Exhibit A–1 sworn out by Officer Randall to secure a wire intercept just two weeks prior. Appellant attacks the three and one-half page affidavit in support of the search warrant but fails to address the sixty-page affidavit expressly incorporated into the three and one-half page affidavit. We will consider both affidavits to determine whether probable cause existed for the issuance of the search warrant. However, because of the voluminous facts set forth, we will not attempt to do more than highlight generally what the affidavit includes.

In the affidavit utilized to secure execution of the wire intercept, the affiant states his fifteen-year experience as a peace officer, five years of same being as a Narcotics Investigator with the Texas Department of Public Safety Narcotics Service, noting his numerous controlled substance investigative experiences and explaining his training and background. Affiant Randall stated his role in an investigation spanning four months to that point in time and involving three areas of the state, including the Tarrant County, Texas area. Based upon his investigation and with the cooperation of the Texas Department of Public Safety Narcotics Service, the United States Drug Enforcement Administration, the Lubbock Police Department, the Odessa Police Department, and other police agencies, he had

identified the defendant as a *prominent member* of a drug trafficking organization.

The affiant expressly named eleven specific law enforcement agencies he had consulted with in order to compile the information to his affidavit as well as specifically named officers within these agencies. Of particular note is an interview conducted by FBI Agent James Beck with Pete Ford on April 17, 1982 wherein Ford made declarations against penal interest naming co-defendant Ernest Dean Kelley as his drug supplier and stating that he had been in Kelley's residence and observed large quantities of illicit drugs. Ford further related Kelley's chemist was a man known as "Leon" and described four known laboratories operated by Kelley. Ford had on his person at the time of his arrest telephone numbers of named members of this narcotics organization including Ernest Dean Kelley and Denise Arnold. Agent Beck advised that Ford had since supplied narcotics information found to be true.

Affiant Randall also interviewed a proven informant on August 25, 1982, who detailed Ernest Dean Kelley's drug operation in the Cheyenne Social Club.

Affiant Randall had interviewed Texas Ranger Charles Brune on September 14, 1982 who released an abandoned P2P laboratory to affiant and his associate Sgt. Tom Martin. Inspection of the glassware revealed its point of origin as Metroplex Chemical, Dallas, Texas. On October 19, 1982 Sgt. Martin interviewed Don Fernandez, Manager of Metroplex, who identified a photograph of appellant as being a purchaser of large amounts of chemicals, glassware, and equipment on numerous occasions. On November 18, 1982, records at Metroplex revealed appellant's purchase of chemicals confirmed by DPS Chemist Bill Ginn to be the type used to manufacture amphetamine.

Affiant Randall personally interviewed Andrews, Texas police officer Tom Finley on October 18, 1982 and learned that Finley had arrested Ernest Dean Kelley two days prior for possession of amphetamine. Kelley had three pistols in his possession and

$8,000 in cash in a plastic bag as well as telephone numbers for Leon Pinkston, Lori Pinkston, and other known narcotics dealers.

Affiant Randall personally interviewed Lubbock Detective Joe Hargrave on November 9, 1982 who related facts surrounding a December 31, 1981 search warrant execution on a Lubbock motel room. That raid netted 182 grams of amphetamine in the possession of Leon Pinkston and another man.

Affiant Randall received information through a court ordered pen register on November 19, 1982 that the Millsap residence of Pinkston had been telephoned from Ernest Dean Kelley's residence in Lubbock. Affiant further obtained information from Sgt. Tom Martin that the Millsap residence of Pinkston is in a heavily wooded and sparsely populated area that cannot be seen from the roadway. Affiant states that based on his experience and of those he had consulted with that drug laboratories are often set up in such secluded areas.

Affiant set forth numerous other underlying circumstances to show that the co-conspirators were involved in an established long term pattern of criminal activity involving the manufacture and distribution of amphetamine and/or methamphetamine which in the interest of brevity we will not set out. Further, affiant summarized the roles and criminal histories of each of the named co-conspirators.

In the three and one-half page affidavit, affiant outlined a five month investigation of a narcotics conspiracy and recited affiant's personal involvment and familiarity with the circumstances set forth. The facts related include the following: (1) numerous telephone conversations were intercepted in which Ernest Kelley and Denise Arnold, known drug dealers, indicated that they did not have any amphetamine or methamphetamine and would be leaving soon to pick up a quantity. (2) On December 2, 1982, a call was monitored between Ernest Kelley and an individual believed to be Marlin Sasser (but who subsequently

proved to be Pete Ford) that Kelley would be traveling to the laboratory when advised to do so by Leon Pinkston. During the same conversation, Ford advised Kelley of a recent drug lab raid in Cleburne, Texas and Kelley, expressing concern that it might be their lab, stated he would call the laboratory before he left. (3) On the same day, Kelley, Don Howell and Dale Lee Parker, two known drug dealers, left Kelley's Lubbock, Texas, residence in separate vehicles and were followed to the Holiday Inn in Mineral Wells, Texas. (4) On December 3, 1982, surveillance units followed Ernest Kelley over a circuitous route to the same hotel and observed him meet with Howell and Parker. (5) Kelley and Parker drove to the lab site (Pinkston's property) and surveillance units observed all three traveling to and from the lab site since their arrival in Mineral Wells. (6) On December 3, 1982, surveillance units observed appellant leave the laboratory site and travel toward Dallas. Dallas Drug Enforcement Agents located appellant at Metroplex Chemical Company in Dallas. After appellant left, they learned that he had purchased two five-gallon cans of ether and assorted glassware both of which are commonly used in the manufacture of amphetamine. Appellant was observed returning to the laboratory site shortly after his purchase.

Keeping in mind that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants," *Ventresca v. United States,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965); *Hennessy v. State, supra* at 92, we hold that the magistrate had a substantial basis for concluding that probable cause existed for the search based on the "totality of the circumstances" presented in the affidavit. Appellant's fourth ground is overruled.

In his fifth ground of error, appellant contends that the trial court erred in overruling his motion for mistrial based on the improper display before the jury of the thirty-seven guns seized during the search of appellant's premises. The record re-

flects that law enforcement officers found and seized thirty-seven weapons during the search conducted on appellant's premises. All these weapons were displayed to the jury and the state offered them in evidence. The trial court sustained appellant's objection to the admission of the weapons and instructed the jury to disregard their display, but denied appellant's motion for mistrial. Appellant contends on appeal that the display of the weapons was so prejudicial that it prevented his receiving a fair and impartial trial. The State argues that the weapons seized at the time and place of the offense and arrest were admissible as res gestae.

The facts and circumstances surrounding the commission of an offense are admissible to prove the guilt of the accused. *Jackson v. State,* 575 S.W.2d 567, 570 (Tex.Crim.App.1979). Questions concerning the admission of evidence lie within the discretion of the trial judge. *Jackson v. State, supra.* Further, as stated by the Court of Criminal Appeals in *Arnott v. State,* 498 S.W.2d 166, 178 (Tex.Crim.App.1973) (on Motion for Rehearing):

"[e]vidence of tangible objects found during the course of a search is often admitted as 'res gestae' as is evidence of various, seemingly irrelevant details of a transaction. This is permitted, even though the relevance of the evidence may not be readily apparent, because the law recognized that transactions do not occur in a vacuum. By being informed of all the circumstances surrounding a particular transaction, the trier of fact is enabled to put the witness's testimony in its proper perspective, and to form a basis for judging the credibility of the witness. Some transactions are such that the 'bare bones' of the occurrence might seem quite plausible, but when related in context seem very unlikely to have actually occurred (or vice versa). Therefore, such evidence is usually admitted even though its relevance is not shown, or, even if irrelevant, unless it is unduly prejudicial. *McCormick & Ray, supra,* sec. 911."

In the instant case, the record reflects that the guns lay on the courtroom floor while the state elicited testimony, without objection, as to the circumstances of their seizure; however, the guns were not visible to the jury unless they were standing. It was only when the State offered the guns in evidence that appellant objected on the ground that they were not material to the case on trial. Such objection came too late to avoid prejudicial effect, if any, before the formal offer. To preserve error, an objection must be made at the first opportunity *Marini v. State*, 593 S.W.2d 709, 714 (Tex.Crim.App.1980). *Crocker v. State*, 573 S.W.2d 190, 205 (Tex. Crim.App.1978).

However, even had error been properly preserved, we note that the trial judge on more than one occasion instructed the jurors not to consider the guns for any purpose until they were admitted in evidence. At appellant's request, the trial court had the guns removed from the courtroom early in the trial and again instructed the jurors to disregard them. Generally, an instruction to disregard will cure error, except where the evidence is clearly calculated to inflame the minds of the jurors and is of such character as to suggest the impossibility of withdrawing the impression produced in the juror's minds. *Carter v. State*, 614 S.W.2d 821, 825 (Tex.Crim.App.1981); *Thompson v. State*, 612 S.W.2d 925, 928 (Tex.Crim.App. 1981).

We do not find the evidence to be so prejudicial and conclude that error, if any, in the display of the guns before the jury was not reversible error. The guns, although part of the res gestae of the offense and of the arrest, were not admitted in evidence and the jury was instructed not to consider them for any purpose. Further, the evidence proving the offense of unlawful manufacture of amphetamine is overwhelming. Appellant's fifth ground is overruled.

In his sixth ground, appellant contends that a fatal variance between Enhancement Count One of the indictment and the proof of that enhancement paragraph rendered the evidence insufficient to support the trial court's finding of "true". Enhancement Count One of the indictment alleged a prior felony conviction in Cause No. 85497 in Criminal District Court No. 3 of Tarrant County, Texas, for theft of property valued at $50.00 or more and that such conviction became final on December 7, 1973. The proof introduced at trial reflects that appellant was sentenced in that case on August 14, 1972, and that an appeal was taken to the Court of Criminal Appeals. The Court of Criminal Appeals affirmed the judgment of the trial court on December 5, 1973, not on December 7 as alleged in the enhancement paragraph of the indictment. Appellant contends this variance between the allegation in the enhancement paragraph and the proof is material and fatal because it clearly misled appellant to his prejudice. However, appellant fails to show how he was so prejudiced.

In alleging a prior conviction to enhance punishment, a variance between an allegation of the indictment and proof is a material and fatal variance only if it would mislead a defendant to his prejudice. *Hall v. State*, 619 S.W.2d 156, 157 (Tex. Crim.App.1980) (opinion on State's motion for rehearing). The record before us reflects that the correct county court and cause number were alleged and proved. Further, there is no showing that appellant was surprised or misled. We conclude the variance between the indictment and proof was not fatal and overrule appellant's sixth ground.

Appellant contends in a seventh ground that the evidence is insufficient to prove the prior felony conviction alleged in Enhancement Count Two, Paragraph One, of the indictment. The record reflects that the State alleged in Enhancement Count Two, Paragraph One, of the indictment that appellant was convicted on September 8, 1970 in Cause No. 78105 in Criminal District Court No. 2 of Tarrant County, Texas for the offense of assault with intent to commit murder without malice. At the punishment phase of the trial, the State offered Exhibit No. 63 which was com-

prised of certified copies of the indictment, judgment and sentence in Cause No. 78105. The court excluded State's Exhibit No. 63 because of a variance in the documents regarding the date of the offense. Appellant contends on appeal that the evidence is insufficient to support the trial court's finding of "true" to Enhancement Count Two, Paragraph One, because no copy of the indictment in Cause No. 78105 was introduced in evidence. We find no merit to appellant's contention.

 While the indictment of a prior conviction is admissible at the punishment phase of the trial, *Knox v. State*, 487 S.W.2d 322, 326 (Tex.Crim.App.1972), it is not required to be introduced in evidence in order for the evidence of the prior conviction to be sufficient. *See Mullican v. State*, 322 S.W.2d 284 (Tex.Crim.App.1959). In the instant case, State's Exhibit No. 61, a pen packet referring to both Cause No. 78105 and Cause No. 79972 and admitted in evidence, reflects that on September 8, 1970, appellant was convicted in Cause No. 78105 of the offense of assault with intent to commit murder without malice and sentenced to two years in the Texas Department of Corrections. We conclude that the evidence is sufficient to prove the prior conviction alleged in Enhancement Count Two, Paragraph One, of the indictment. Appellant's seventh ground is overruled.

In his eighth ground, appellant contends that the prior felony conviction alleged in Enhancement Count Two, Paragraph Two, of the indictment is void and thus cannot be used to enhance punishment because on September 8, 1970, the date of judgment and sentence there was no such offense. We find no merit to appellant's contention.

To enhance appellant's punishment in this case the indictment alleges in Enhancement Count Two, Paragraph Two that appellant was convicted in Cause No. 79972 in the Criminal District Court No. 2 of Tarrant County, Texas, on September 8, 1970, for the offense of unlawfully carrying a pistol on a premises under the provisions of the Texas Liquor Control Act. Appellant contends that the 1970 conviction for unlawfully carrying a pistol on a premises

under the provisions of Texas Liquor Control Act as shown in State's Exhibit No. 61 is void because Article 483 of the former Penal Code prohibited carrying a handgun on any premises licensed or issued a permit by this State for the sale or service of alcoholic beverages. Article 483 of the former Penal Code read in part as follows:

(a) any person who shall carry on or about his person ... any pistol ... shall be punished by a fine of not less than One Hundred Dollars ($100) nor more than Five Hundred Dollars ($500) or by confinement in jail for not less than one (1) month nor more than one (1) year, except that if the offense is committed by a person while in any premises covered by a permit or license issued under the provisions of the Texas Liquor Control Act ... he is guilty of a felony.

 Appellant apparently contends that the judgment is not sufficiently specific to describe the offense. Any question as to the offenses of which appellant was convicted is clarified by examination of the indictment in Cause No. 79972, which is included in the record, wherein the premises are specified by address and are expressly alleged to be "covered by a permit and license under the provisions of the Texas Liquor Control Act" thus tracking the language of Article 483 as set out above. The indictment may be considered in construing the judgment and sentence in order to determine the offense for which the accused is convicted. *Hughes v. State*, 493 S.W.2d 166, 170 (Tex.Crim.App.1973).

 Moreover, since two other prior felony convictions were alleged and proved for enhancement of punishment, any invalidity as to this conviction would not affect the punishment. We find no reversible error and overrule appellant's eighth ground of error.

In a ninth ground, appellant contends that the conviction is invalid because the Texas Controlled Substances Act, as amended in 1981 is unconstitutional. The Court of Criminal Appeals held in *Ex parte Crisp*, 661 S.W.2d 944 (Tex.Crim.App.1983) that the 1981 amendment to the Act was unconstitutional due to the drafting errors

in the caption. As a result, the pre-amendment version of the Texas Controlled Substances Act remained in full force and effect as though the 1981 amendment had never been enacted.

 A review of both the pre-amendment version and the 1981 amended version of the Controlled Substances Act, reveals that the offense of unlawful manufacture of a controlled substance, to wit: amphetamine, is a third degree felony under both. However, the 1981 amended version provides for an aggravated offense where the amount of controlled substance involved weighs more than 200 grams, a provision not found in the pre-amended version, therefore, the range of punishment between the two versions differs. Normally, this difference would require reversal; however, because punishment in the present case was assessed under TEX.PENAL CODE ANN. sec. 12.42(d) (Vernon Supp.1984), pursuant to the court's finding that appellant had been convicted of two prior felonies, appellant was not harmed by the unconstitutionality of the statute because punishment was not assessed under the provisions of the Controlled Substance Act. Appellant's ninth ground is overruled.

The judgment of the trial court is affirmed.