John HARRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–91–00486–CR.

Court of Appeals of Texas, San Antonio.

Oct. 29, 1993.

Mark Stevens, Stephanie L. Barclay, San Antonio, for appellant.

Steven C. Hilbig, Criminal Dist. Atty., Angela Moore, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Before CHAPA, C.J., and BIERY and ONION,[1] JJ.

## OPINION

ONION, Justice (Assigned).

This appeal is taken from a conviction for driving a motor vehicle while intoxicated. After the jury found appellant guilty, the trial court assessed punishment after finding as true the enhancement of punishment paragraph of the information alleging that as a direct result of the offense another person, Nicole Ledford suffered serious bodily injury. Punishment was assessed by the trial court at confinement in the county jail for one year and a fine of two thousand dollars ($2000).

Based on this voluminous record, appellant advances twelve points of error, some concerning rapidly evolving issues of current

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

criminal law in this state. He raises questions about the amendment of the information, the elicitation of testimony concerning his post-arrest silence, the alteration of a defense exhibit after it had been admitted into evidence without objection, the admission into evidence of exhibits from the criminal investigative laboratory records over a "hearsay" objection as well as the admission into evidence of a "mug [shot] log," and the prosecutor's jury argument. In addition, appellant challenges not the legal but the factual sufficiency of the trial court's finding that appellant caused serious bodily injury to another person.

Appellant does not challenge the legal sufficiency of the evidence to sustain the conviction. A brief recitation of the facts, however, will place the points of error in proper perspective. About 9:20 p.m. on Christmas night, December 25, 1989, at the intersection of Hausman Road and Loop 1604 in Bexar County, there was a collision between appellant's pick-up truck and Sandra Ledford's Dodge automobile. Appellant was alone in his truck. Ledford was driving her car accompanied by her daughters, Jill and Nicole.

Ledford had had Christmas dinner with her parents at their home in Helotes. She had consumed three glasses of punch spiked with Vodka between 6:45 and 7:45 p.m. Thereafter she ate cookies and drank coffee. Ledford left for her own home about 9 p.m. Ledford testified that appellant's vehicle ran a red traffic light at the intersection and struck her car injuring her daughters.

Appellant spent the afternoon and early evening at the home of his girlfriend's parents where he ate Christmas dinner. Appellant related that between 1 p.m. and 8 p.m. he consumed four beers and a glass of wine. Appellant's girlfriend and her father testified that appellant was not intoxicated when he left their home. Appellant stated that he later went to a party being given by a friend, but that he stayed there only a few minutes and did not consume any alcoholic beverages. Appellant testified that the Ledford car ran a red traffic light and struck his truck.

Jill Ledford and Ogden Chamberlain, a passing motorist who stopped, both testified that almost immediately after the accident appellant apologized for "running" the red light. A chemical analysis of appellant's blood sample showed an alcoholic concentration of 0.13, which is above the legal limit (0.10) for intoxication in Texas. Police officers and other witnesses testified that Sandra Ledford was not intoxicated at the time of the accident.

Truman Hall, an accident reconstruction expert, testified for the defense. Based upon his calculations, Hall believed that Ledford ran the red light and caused the accident. The jury rejected appellant's version of the facts and found him guilty of driving while intoxicated.

At the penalty stage of the trial before the court, Sandra Ledford testified that her daughter, Nicole, was in a coma for several months after the accident and was having to learn to talk and walk again. The medical records showing Nicole's closed head injury with brain stem damage and numerous fractures were admitted by stipulation. The trial court found appellant had caused serious bodily injury to Nicole Ledford and assessed punishment.

In points of error one and two, appellant argues that the prosecutor erred by eliciting evidence that appellant (1) did not give his version of the accident to the police, and (2) only answered "some" of the officer's questions because these were comments on appellant's post-arrest silence in violation of article I, section 10, of the Texas Constitution.

Both points of error concern the testimony of Officer Lloyd Griggs to which appellant timely objected. We briefly review the evidence prior to the admission of the complained-of testimony. San Antonio Police Officers Edward Gonzales and Lloyd Griggs were dispatched to investigate the accident in question. Upon arrival at the scene, they observed the vehicles in the middle of an intersection and group of people standing nearby. Officer Griggs began placing flares on the road and Officer Gonzales approached the group to identify the drivers. After he identified the drivers, Gonzales testified that he asked appellant to come to the side of the road and that he "had" appellant walk in front of him. Gonzales had smelled the odor

of intoxicants on appellant's breath and had observed appellant stagger. In response to Gonzales's questions, appellant stated he was not injured. Officer Gonzales shined his flashlight on appellant to see if he could observe injuries and continued the conversation. Gonzales saw that appellant's pants were wet in the crotch area, that appellant's eyes were bloodshot, and that his speech was slurred. At this point, Officer Gonzales left appellant and went to confer with Officer Griggs about appellant's intoxication. Gonzales asked Griggs to go "back" and talk to appellant. Gonzales watched Griggs walk to where appellant was standing and observed them conversing. Gonzales related that Officer Griggs "came back and confirmed what I thought." After this conversation, appellant was arrested and placed in the patrol vehicle.

It was when Officer Griggs testified about his conversation with appellant that the complained-of testimony was elicited. On direct examination, the record reflects:

Q: Did you ask him about the accident?

A: Yes, sir. I did.

Q: Did you elicit any kind of response from him?

A: Yes, sir.

Q: Did he answer any questions?

A: *Some of them,* yes, sir.

MR. STEVENS: (DEFENSE COUNSEL) Your Honor, again I'm going to object to that response as an attempt to penalize him for any post-arrest—post-*Miranda* silence. And that's illegal.

MR. SEPULVEDA: This was not post-*Miranda.*

MR. STEVENS: Post-arrest then. It's still improper to do that. That's my objection.

THE COURT: Overruled.[2]

(Emphasis added.)

Immediately thereafter, the record shows on direct examination the following:

Q: What else did you ask him?

**2.** Appellant makes the foregoing elicitation of testimony the basis for his second point of error.

**3.** Appellant has designated the foregoing elicitation of testimony for his first point of error.

A: I asked for an explanation of the accident from his—what he could tell me as to the cause of the accident.

Q: *Did he ever give you a version of what happened in this accident?*

A: *No, he didn't.*

MR. STEVENS: Same objection. I reurge that objection.

THE COURT: Overruled.

(Emphasis added.)[3] Officer Griggs then continued to testify and stated his belief that appellant was unable to answer questions because of the state of appellant's intoxication.

■■■ In Texas post-arrest silence may not be used against a defendant, even if he has not been warned pursuant to *Miranda.*[4] *Sanchez v. State,* 707 S.W.2d 575, 580 (Tex. Crim.App.1986); *see also Cuellar v. State,* 613 S.W.2d 494, 495 (Tex.Crim.App. [Panel Op.] 1981); *Womack v. State,* 834 S.W.2d 545, 546 (Tex.App.—Houston [14th Dist.] 1992, no pet.); *Juhasz v. State,* 827 S.W.2d 397, 405 n. 3 (Tex.App.—Corpus Christi 1992, pet. ref'd). Even when the defendant testifies, he may not be cross-examined about his post-arrest silence unless it is first established that he made a post-arrest inconsistent statement. *Turner v. State,* 719 S.W.2d 190, 193 (Tex.Crim.App.1986). Clearly, however, it is permissible to inquire into a defendant's pre-arrest silence. *Waldo v. State,* 746 S.W.2d 750, 755 (Tex.Crim.App.1988); *Mowbray v. State,* 788 S.W.2d 658, 666 (Tex. App.—Corpus Christi 1990, pet. ref'd), *cert. denied,* 498 U.S. 1101, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991); *see also Jenkins v. Anderson,* 447 U.S. 231, 238–39, 100 S.Ct. 2124, 2129–30, 65 L.Ed.2d 86 (1980).

The State urges that appellant had not been placed under arrest when Griggs was questioning him at the scene of the accident. Appellant asserts that Officer Gonzales "had" appellant walk in front of him to the side of the street. He argues that "appellant was under arrest at this point." Neither party,

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

however, briefs the issue with regard to the facts of this case.

■ "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." TEX. CODE CRIM.PROC.ANN. art. 15.22 (Vernon 1977). A statutory arrest occurs "when a person's liberty of movement is restricted or restrained." *Burkes v. State,* 830 S.W.2d 922, 925 (Tex.Crim.App.1991); *Amores v. State,* 816 S.W.2d 407, 411 (Tex.Crim.App. 1991); *Hoag v. State,* 728 S.W.2d 375, 379 (Tex.Crim.App.1987). An investigative detention "is one during which police are allowed to briefly question a suspicious person respecting his identity, his reason for being in the area or location, and to make similar reasonable inquires of a truly investigatory nature." *Amores,* 816 S.W.2d at 412; *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim. App.1983).

■ In the instant case, Officers Gonzales and Griggs arrived at the scene of a vehicular accident. While Griggs set out flares, Gonzales began an inquiry to determine who were the drivers. He asked appellant to step to the side of the road for further discussion. The officer observed appellant's walk. After his conversation with appellant, Officer Gonzales left appellant alone and sought out Officer Griggs at a different location at the scene. There is no showing that appellant's liberty of movement was restrained. Griggs approached appellant and engaged him in conversation. Thereafter, Griggs conferred with Gonzales. It is then that they jointly decided that appellant was intoxicated and decided to arrest him. Appellant then for the first time was arrested and taken to the patrol vehicle. Appellant was not under arrest when his conversation with Griggs occurred. There was no error in the trial court overruling appellant's objection to comments on appellant's post-arrest silence under the circumstances. Points of error one and two are overruled.

■ In point of error three, appellant urges that the trial court erred in admitting State's exhibit 17, a "mug log," because it was hearsay that did not fall under any exception to the hearsay rule.

Appellant's mug shot (photograph) was taken following his admission to the Bexar County Detention Center. Appellant introduced into evidence that mug shot, defendant's exhibit 3, as a fair and accurate depiction of his appearance at the time.

The State later introduced State's exhibit 17, a mug log or sheet of the Sheriff's Office reflecting the time and date appellant's mug shot was taken, under the business records exception of the hearsay rule. *See* TEX. R.CRIM.EVID. 803(6). The sponsoring witness was Sergeant Simon Montalbo, records keeper for the Bexar County Sheriff's Office's Central Records Bureau, who was custodian of the records. Montalbo testified that the entry was made by another officer, who was not identified, in the regular course of business. Appellant's hearsay objection was overruled.

The exhibit reflected that appellant's mug shot was taken at 3:55 a.m. on December 26, 1989.

Appellant relies upon *Cole v. State,* 839 S.W.2d 798 (Tex.Crim.App.1990), to support his contention that the entry made by an unidentified non-testifying deputy sheriff was inadmissible, even though the record entry was moved into evidence through the testimony of the custodian of the records.

Whatever the continued viability of *Cole* over the long haul or its application to the factual situation presented by this point of error, we do not deem *Cole* controlling. Sergeant Montalbo testified that appellant's mug shot was part and parcel of the records from which he was testifying and was the same photograph as appellant's exhibit 3. The rule of optional completeness, TEX.R.CRIM. EVID. 107, would control and permit the admission of State's exhibit 17 into evidence. The trial court did not err in overruling appellant's objection to the introduction of the exhibit. Point of error three is overruled.

In points of error four through eight, appellant contends that the trial court erred in admitting State's exhibits 18, 24, 25, 26, and 27 because they were hearsay and not admis-

sible under any exception to the hearsay rule.

Here again, appellant relies upon *Cole*, 839 S.W.2d 798, to support his contentions. *See also Aguilar v. State*, 850 S.W.2d 640 (Tex. App.—San Antonio 1993, pet. filed). In *Cole*, a chemist for the Texas Department of Public Safety had analyzed physical evidence taken from a sexual assault victim. Because the chemist was unavailable to testify, the State called his supervising chemist to testify and discuss the laboratory report of the physical evidence compiled by the non-testifying chemist. The Court of Criminal Appeals held that the trial court erred in admitting, over objection, the report concerning the results of the chemical tests performed by the absent chemist, finding that the same was precluded by the exclusionary provision contained in Texas Rule of Criminal Evidence 803(8)(B) (public records exception to the hearsay rule),[5] which forbade admission under Texas Rule of Criminal Evidence 803(6) (business records exception to the hearsay rule). The court found that full time chemists with the Department of Public Safety were "law enforcement personnel" for the purposes of Rule 803(8)(B). 839 S.W.2d at 806. In *Aguilar*, this Court was confronted with a similar situation where a supervising chemist at the Bexar County Medical Examiner's Office[6] testified to the chemical analysis of substances seized from the defendant based upon a report of an absent (non-testifying) chemist whom the witness supervised. *Aguilar* followed *Cole* and reversed the conviction, finding that the erroneous admission of the testimony was not harmless error under Rule 81(b)(2) of the Texas Rules of Appellate Procedure. 850 S.W.2d at 642.

Only recently, the Court of Criminal Appeals was confronted with the admission of an autopsy report in *Garcia v. State*, 868 S.W.2d 337 (Tex.Crim.App.1993). There the acting medical examiner for Dallas County testified that he was the custodian of the records. Through the medical examiner's testimony, the State tendered an autopsy report prepared by a non-testifying deputy medical examiner. The testimony was admitted over a hearsay objection. TEX. R.CRIM.EVID. 801(d) and 802. The court of appeals affirmed the conviction, holding that the autopsy report was admissible as both a public record and a business record exception. *See Garcia v. State*, 833 S.W.2d 564, 569 (Tex.App.—Dallas 1992). The Court of Criminal Appeals affirmed, holding that "as a general rule, medical examiners are not considered 'other law enforcement personnel' under Rule 803(8)(B) as far as their duties relate to the preparation of autopsy reports." *Garcia*, 868 S.W.2d at 342 (Tex.Crim.App. 1993).

With this background, we turn to the points of error in question. Karen Bowen, a forensic chemist was employed by the Bexar County Medical Examiner's Office at the time of the chemical analysis of appellant's blood sample. At the time of the trial, she was no longer employed there. Bowen testified that she performed an alcohol analysis on appellant's blood sample by use of an instrument known as a gas chromatograph. She identified State's exhibit 18, which contained her initials, as a printout from the gas chromatograph on appellant's blood sample. The "two readouts" of 0.131 and 0.137 alcohol concentration were reflected on the exhibit. Bowen testified that in accordance with office policy the "readouts" were recorded as 0.13 alcohol concentration in the blood.

Dr. James Garriott, Chief Toxicologist of the Bexar County Medical Examiner's Office and the Regional Criminal Investigative Laboratory, testified that he was custodian of the records of the office. Garriott stated that his

---

**5.** Rule 803 provides in pertinent part:
  The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
  (8) **Public Records and Reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, matters observed by police officers and other law enforcement personnel....* (Emphasis added.)

**6.** The *Aguilar* opinion referred to the medical examiner's office as now being known as the Bexar County Forensic Science Center. *Id.,* 850 S.W.2d at 642.

office had the responsibility of "testing all of the blood samples that are taken for medical legal purposes ... by all of the police departments in Bexar County." He added that his office did the testing for alcohol and drugs in driving while intoxicated litigation. He testified as to the procedures used in some detail and explained the operation of the gas chromatograph. Dr. Garriott described State's exhibits 18, 24, 25, 26, and 27 as five exhibits that "are copies of the pages of the record, the chain of custody record, the report record, the work sheet, the gas chromatograms that pertain to the alcohol analysis and the drug analysis and two pages that relate to drug analysis on this blood sample." He did not individually identify each exhibit but related that they were all part of the criminal investigation laboratory record. Dr. Garriott related that the records were made at or near the time of the events that they were purporting to depict; that the information within the documents were placed there by a person with personal knowledge of the matter contained therein; and that it was the normal practice of the medical examiner's office to keep these records. Appellant's objections to the five exhibits on the basis of hearsay were overruled, and the exhibits were admitted into evidence. It is clear from Dr. Garriott's testimony as to the nature of his laboratory's work with regard to the chemical analysis of blood samples in driving while intoxicated cases that the *Garcia* decision (as to autopsy reports) will have no application here, even if the medical examiner's office was involved. The question is whether *Cole* calls for the sustaining of appellant's points of error.[7]

■ Bowen, the chemist who actually performed the analysis on appellant's blood sample, testified and identified the results of the analysis as reflected on State's exhibit 18, which bore her initials. The mere fact that the exhibit was moved into evidence through Dr. Garriott rather than Bowen does not violate *Cole*. State's exhibits 24 and 25 were preprinted forms, one filled out in handwriting and the other was typewritten. They are virtually identical. Exhibit 25 is labeled "Laboratory Worksheet." Exhibit 24 does not appear to carry a heading. The exhibits trace the chain of custody in the laboratory after the blood sample was received from Officer Griggs. Under "Description" the exhibits describe the blood samples as "two gray stoppered vacutainer tubes containing blood." Under "Results," the exhibits show:

Blood
Acid Neutral
Drug Screen:
(Blood—FPIA)
None Dec.
Alkaline Drug Screen For
Nicotine
Alcohol: Positive
For 0.13 g/dL
Ethanol

■ Officer Griggs testified he was present when the blood sample was taken from appellant at the hospital and that he transported the properly marked tubes to the medical examiner's special locker. Dr. Garriott personally removed the tubes from the locker and testified as to the procedures that followed. This, along with Bowen's testimony about her actions, clearly established the chain of custody of the blood sample. This testimony was before the jury without objection and was not inconsistent with the recitations in the exhibits as to chain of custody. The results of blood alcohol tests found in the exhibits is consistent with Bowen's unobjected to testimony and with State's exhibit 18 that we have held was properly admitted. There was also unobjected-to testimony about the finding of nicotine in appellant's blood, which of course, is not a violation of the law. Dr. Garriott testified without objection that appellant's blood was also tested for barbiturates and drugs and that such findings were negative. Insofar as the exhibits reflect such findings, they were more favorable to the appellant than the State who offered the exhibits. If the fact to which the hearsay relates is sufficiently proven by other unobjected-to evidence, as in the instant

---

7. It is observed that at the time of this 1991 trial the opinion on original submission in *Cole* had been rendered (November 14, 1990). The opinion on rehearing (October 21, 1992) upheld the original opinion and sought to clarify it.

case, the admission of the hearsay is deemed harmless and does not constitute reversible error. *Anderson v. State,* 717 S.W.2d 622, 627 (Tex.Crim.App.1986); *see also East v. State,* 702 S.W.2d 606, 611 (Tex.Crim.App.), *cert. denied,* 474 U.S. 1000, 106 S.Ct. 418, 88 L.Ed.2d 368 (1985).

■ State's exhibits 26 and 27 appear to be printouts from the chemical analysis of appellant's blood sample for barbiturates and nicotine. The barbiturates test was negative and the other merely showed appellant has possibly been a user of tobacco.

This information was in the record from other sources without an objection. If these exhibits were hearsay and admitted in violation of *Cole,* we deem the error harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2); *Harris v. State,* 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). Points of error four through eight are overruled.

In his ninth point of error, appellant urges that the trial court erred in overruling his objection to the State's motion to amend the information "because the amended information charged an additional or different offense in violation of article 28.10(c) of the Texas Code of Criminal Procedure."

The information in pertinent part, charged that:

on or about the 25TH day of DECEMBER A.D. 1989, JOHN HARRIS, hereinafter called defendant, did then and there drive and operate a motor vehicle in a public place while the said defendant was intoxicated, to-wit: by reason of the introduction of ALCOHOL into the defendant's body; . . . .[8]

Appellant filed a motion to set aside the information based upon *State v. Carter,* 810 S.W.2d 197 (Tex.Crim.App.1991). The State filed a motion to amend the information. Appellant objected to the State's motion claiming that the proposed amendment would charge him with an additional or different offense in violation of the statute permitting amendments to indictments and informa-

tions. *See* TEX.CODE.CRIM.PROC.ANN. art. 28.-10(c) (Vernon 1989). The objection was overruled. The trial court granted the State's motion and a written "order of amendment" setting forth the "amended" information charging appellant (1) with driving while intoxicated by loss of mental and physical faculties by reason of the introduction of alcohol into his body, and (2) with driving while intoxicated *per se* (having "an alcohol concentration of 0.10 or more in his body").

Appellant relies upon language in *Carter,* 810 S.W.2d at 200, to argue that under article 6701*l*–1(a)(2)(A)–(B)[9] in effect at the time, there were two "offenses"—a "loss of faculties" offense and a "per se" offense—that have fundamentally different natures. He notes that originally the information charged driving while intoxicated without alleging "type." Despite some of the language in *Carter,* the "amendment" here simply dealt with different means or modes of committing the same offense—driving while intoxicated. We do not interpret *Carter* to hold otherwise.

■ Moreover, there was not a valid amendment of the information for the "amendment" was not reflected on the fact of the information. *Ward v. State,* 829 S.W.2d 787, 793 (Tex.Crim.App.1992). "Amend" means actual alteration in the charging instrument itself, be it an indictment or information. *Id.* If the State wishes to amend the pleadings, it must first request the trial court's permission by a "motion for leave to amend." *Id.* Neither the motion or the trial court's subsequent order granting the motion is "the amendment." *Id.* "The amendment . . . is the actual alteration of the charging instrument." *Id.; see also Rent v. State,* 838 S.W.2d 548, 551 (Tex.Crim.App.1992); *McHenry v. State,* 829 S.W.2d 803, 804 (Tex. Crim.App.1992); *Brown v. State,* 843 S.W.2d 709, 715 (Tex.App.—Dallas 1992, pet. ref'd); *Montoya v. State,* 841 S.W.2d 419, 423 (Tex. App.—Dallas 1992, pet. ref'd); *McFarland v. State,* 834 S.W.2d 481, 483–84 (Tex.App.— Corpus Christi 1992, no pet.).

---

**8.** The information also alleged enhancement of punishment paragraph. It is quoted later in this opinion.

**9.** TEX.REV.CIV.STAT.ANN. art. 6701*l*–1(a)(2)(A)–(B) (Vernon Supp.1993) (since amended). *See* Act of June 15, 1993, 73rd Leg., R.S., ch. 662, § 5. 1993 Tex.Gen.Laws 2459, 2461.

Here, appellant's complaint is simply that the trial court erred in granting the State's motion for leave to amend the information. Under the circumstances, we find no error. Point of error nine is overruled.

■ In his tenth point of error, appellant contends that the trial court erred in "whiting out" a portion of a defense exhibit properly admitted into evidence as a business records exception to the hearsay rule. TEX. R.CRIM.EVID. 803(6).

Defense exhibit 4 was admitted into evidence after the proper predicate was laid. Maria Garcia, medical records supervisor and custodian of the records for the Medical Psychiatric Department for the Bexar County Adult Detention Center, identified the exhibit as appellant's medical records from his incarceration on December 26, 1989.

The exhibit was styled "Receiving Screening Form for Arrestee." One of the questions asked on this form was "whether the person is in pain, bleeding, injured or in need of emergency care." It was checked "yes." It was established that the answer was based on an officer's observations at the time of the booking. When admitted, the above-mentioned question and the answer were circled on the form-exhibit.

Sometime later, at the time of a recess, the trial court ordered the circle around the question and answer to be "whited out" over appellant's objection. It appears that the alteration took place before the exhibit was published to the jury. Part of the discussion about the matter may not have been recorded. The State did note that perhaps the sponsoring witness should be recalled, but claimed the circling of the question and answer was by a person unknown, that normally such circles are not found on this type of record, and that it was "hearsay" and not a part of the business records. Thereafter, the alteration took place.

The State now contends that the evidence (circling) was not relevant and that questions concerning the admission of evidence lie within the discretion of the trial court. *See Pinkston v. State*, 681 S.W.2d 893, 903 (Tex. App.—Fort Worth 1984, pet. ref'd). Appellant testified that his head struck the wind-shield of his truck when Ledford's car crashed into him and that this made him "a little dizzy." It was his defensive theory that his abnormal behavior after the accident was caused by his head injury, not intoxication; that this theory was corroborated by the jail's medical records; and that the circling of the injury question and the affirmative answer was indicative of emphasis that was lost when the circling was redacted from the exhibit. The bowdlerized version of defense exhibit 4 was submitted to the jury and used extensively by appellant's counsel in jury argument.

Appellant argues that a timely objection must be made as soon as the ground of objection becomes apparent, citing *Thompson v. State*, 691 S.W.2d 627, 635 (Tex.Crim. App.), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1984). He claims that the State's objection came too late.

In view of appellant's disclaimer of injury made to the officers at the scene, appellant's own testimony, and all the circumstances, we conclude that any error in the alteration of the exhibit does not call for reversal. Normally, error may not be predicated upon a ruling that admits or exclude evidence unless a substantial right of the party is affected. TEX.R.CRIM.EVID. 103(a). Moreover, if there was error, we conclude beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment assessed. TEX.R.APP.P. 81(b)(2); *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). Point of error ten is overruled.

■ The eleventh point of error contends that the trial court erred in overruling his objection to the State's jury argument that appellant had employed a "common defense tactic" because this argument struck at appellant over the shoulder of his counsel.

At the guilt/innocence stage of the trial, the prosecutor stated that he anticipated that defense counsel was "going to sue a common defense tactic...." He was interrupted by an objection that he was striking at appellant over the defense counsel's shoulder. The objection was overruled. The prosecutor then suggested that counsel was going to create smoke screens and rabbit trails to

divert the jurors' attention from the elements of the offense. The prosecutor then continued his argument:

And I'll give you an example of how he's done that already. The photograph. Remember the photograph? They introduced a photograph into evidence saying, "Does this look like an intoxicated person to you? Does this look like somebody who drives drunk?"

Of course not. Looking at the photograph he looks sober. But they failed to tell you that that photograph was taken six and a half hours later. It was taken at 3:55 and this accident occurred at 9:20. Who wouldn't sober up by 4 o'clock?

After the first objection to the "common defense tactic" remark, appellant did not object again. TEX.R.APP.P. 52(a); cf. *Purtell v. State*, 761 S.W.2d 360, 368 (Tex.Crim.App. 1988), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App. 1984); *Miranda v. State*, 813 S.W.2d 724, 739 (Tex.App.—San Antonio 1991, pet. ref'd) (a specific objection must be made each time an offer of inadmissible evidence is made in order to preserve any error for review).

■ Generally, a jury argument error is waived by the accused's failure to object. *Briddle v. State*, 742 S.W.2d 379, 390 (Tex. Crim.App.1987), *cert. denied*, 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988). The prosecutor was entitled to make a summation of the evidence and draw reasonable deductions from the evidence. This is within the arena of proper jury argument. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim.App. 1990); *Miranda v. State*, 813 S.W.2d at 741. The introduction of the mug shot or photograph by appellant and the subsequent introduction of the mug log by the State showing the time the photograph was taken has been discussed in point of error three. The prosecutor was not telling the jury anything of which they were not already aware.

■ Reversible error results from improper jury argument only when, in light of the record as a whole, the argument is extreme, manifestly improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and is thus so inflammatory that its prejudicial effect cannot be cured by a judicial instruction to disregard. *Long v. State*, 823 S.W.2d 259, 267 (Tex.Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992).

Courts maintain a special concern for jury arguments that result in uninvited and unsubstantiated accusations of improper conduct directed at a defendant's lawyer. *Orona v. State*, 791 S.W.2d 125, 128 (Tex.Crim. App.1990). The prosecutor's comments here are not to be commended. We hold, however, that when the prosecutor's comments are viewed in the context of all the evidence and the argument of counsel as a whole, no reversible error is presented. *See Hinojosa v. State*, 788 S.W.2d 594, 598 (Tex.App.—Corpus Christi 1990, pet. ref'd) (where the prosecutor told the jurors not to let the defense counsel pull the wool over their eyes).

■ Jury argument error is subject to a harm analysis under TEX.R.APP.P. 81(b)(2); *Orona*, 791 S.W.2d at 129–30. If there was error, we find that it was harmless error under Rule 81(b)(2) applying the rule of *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex. Crim.App.1989). Point of error eleven is overruled.

■ In point of error twelve, appellant argues that the evidence is *factually* insufficient to support the finding by the trial court at the penalty stage of the trial court that appellant caused serious bodily injury as alleged in the information for enhancement of punishment.

Appellant does not challenge the *legal* sufficiency of the evidence. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Valdez v. State*, 776 S.W.2d 162, 165 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 963, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990); *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Crim.App.1984); *see also Geesa v. State*, 820 S.W.2d 154, 160–61 (Tex.Crim.App.1991). Appellant relies upon *Stone v. State*, 823 S.W.2d 375, 379 (Tex. App.—Austin 1992, pet. ref'd), which held that the courts of appeal have the power to make a *factual* review of the sufficiency of

the evidence relative to the proof of the elements of the criminal offense. Appellant asserts that *Stone* is applicable to a challenge to the *factual* sufficiency of the evidence offered to prove an enhancement of punishment allegation in the information. The information alleged in pertinent part:

ENHANCEMENT PARAGRAPH ONE: and it is further presented in and to said court that as a direct result of this offense another person, to-wit: NICOLE LEDFORD, suffered serious bodily injury.

Appellant in his argument does not appear to dispute that the evidence shows that a motor vehicle accident occurred or that Nicole Ledford was seriously injured. He contends that evidence is *factually* insufficient to support the trial court's finding at the penalty stage of the trial that he directly caused serious bodily injury to Nicole Ledford because the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant contends that the issue of causation was hotly disputed. Appellant notes that Sandra Ledford testified that he ran a red traffic light and struck her vehicle with his truck and that he testified that Ledford ran the red traffic light and caused the accident. Appellant concedes that two witnesses, Odgen Chamberlain and Jill Ledford, testified that after the accident appellant apologized to them for running the red light. Although there was evidence of appellant's consumption of alcoholic beverages on the Christmas day in question, appellant points out that Ledford admitted that she also had three alcoholic drinks during the day. In addition, appellant argues that he presented scientific evidence as to the cause of the accident and that the State did not.

Truman Hall, an experienced accident reconstructionist, testified for the defense. Hall examined the evidence in the case and based on physics and mathematics, determined the relative speeds of the two vehicles involved in the accident. According to his computations, the Ledford car was traveling at approximately 47.5 miles per hour, and appellant's truck was moving at less than 10 miles per hour at the time of the collision. It was Hall's opinion that Ledford, not appellant, ran the red light.

The State asserts that *Stone* is an anomaly and has not been followed by the Court of Criminal Appeals or by this court. In *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App. 1990), the Court of Criminal Appeals revisited the standards of review for factually insufficiency and acknowledged that article V, section 6 of the Texas Constitution grants conclusive jurisdiction to the courts of appeals over questions of factual sufficiency. *Id.* at 153. The *Meraz* court stated that:

[W]hen the courts are called upon to exercise their fact jurisdiction, that is, examine whether the appellant proved his *affirmative defense or other fact issue where the law has designated that the defendant has the burden of proof by a preponderance of the evidence,* the' correct standard of review is whether after considering all the evidence relevant to the issue at hand, the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust.

*Id.* at 154–55 (emphasis added).

It has been held, however, that the *Meraz* standard does not apply in the absence of an affirmative defense or other issue upon which the defendant has the burden of proof. *Mukes v. State*, 828 S.W.2d 571, 573 (Tex. App.—Houston [14th Dist.] 1992, no pet.), and cases cited therein. *Meraz* noted that it was expressing no opinion on the role of the courts of appeals in reviewing the sufficiency of the evidence relative to proof of the elements of an offense. 785 S.W.2d at 156.

In *Stone*, the court could see no reason after *Meraz* "why the civil test should not be adopted for a factual-sufficiency review of the elements of the criminal offense as well." 823 S.W.2d at 381. The *Stone* court then established the test for a factual sufficiency review of the elements of a criminal offense as follows:

When the court of appeals conducts a factual-sufficiency review, the court does not ask if any rational jury, *after viewing the evidence in the light most favorable to the prosecution,* could have found the essential elements of the crime beyond a reasonable doubt. Factual-sufficiency re-

view begins with the presumption that the evidence supporting the jury's verdict was legally sufficient, i.e., *constitutionally* sufficient for the purposes of the Due Process Clause of the Fourteenth Amendment. Rather, the court views all the evidence without the prism of "in the light most favorable to the prosecution." Because the court is not bound to view the evidence in the light most favorable to the prosecution, it may consider the testimony of defense witnesses and the existence of alternative hypotheses. The court should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Before reversing a conviction on this basis, the court should detail the evidence and clearly state why the jury's verdict is so contrary to the overwhelming weight of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias; and further state how the evidence contrary to the jury's verdict overwhelmingly outweighs the evidence that supports the verdict. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986), *cited in Meraz*, 785 S.W.2d at 154 n. 2.

*Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, no pet.) (emphasis in original).

*Stone* was reaffirmed by the Austin Court of Appeals in *Orona v. State*, 836 S.W.2d 319, 321 (Tex.App.—Austin 1992, no pet.), and it has been followed in *Williams v. State*, 848 S.W.2d 915, 917 (Tex.App.—Texarkana 1993, no pet.).

*Stone* has been criticized by *Mukes*, 828 S.W.2d at 573–74, and the Fort Worth Court of Appeals has expressly declined to follow it. *Pender v. State*, 850 S.W.2d 201, 203 (Tex. App.—Fort Worth 1993, no pet.). Since *Stone*, the Court of Criminal Appeals has not addressed the question nor has this court. Appellant would have us adopt the *Stone* test and to extend it to enhancement of punishment allegations upon which the State has the burden of proof at the penalty stage of a criminal trial. We need not engage in an adoption analysis in this cause, for if we were to adopt the *Stone* test and expand it as appellant desires, appellant would still not be entitled to the relief he seeks.

Viewing all the evidence presented at trial, we conclude that the finding of the trial court at the penalty stage of the trial that appellant caused serious bodily injury to Nicole Ledford is not so against the great weight and preponderance of the evidence as to be manifestly unjust; the evidence is factually sufficient to support the finding. Point of error twelve is overruled.

The judgment is affirmed.