COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JAIME ZAMORA CORRAL,                             )                  No. 08-03-00102-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  384th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20020D04275)

MEMORANDUM OPINION

            Jaime Zamora Corral appeals his conviction for aggravated robbery. A jury found Appellant
guilty and sentenced him to fifty years’ confinement in the Texas Department of Criminal Justice
together with an $5,000 fine. We affirm.

FACTUAL SUMMARY

            On December 28, 2001, Alma Gonzalez and her nephew, Andy Gonzalez were working at
Gaspar’s Bakery & Grocery, a family business in Socorro. The store was not busy and a few minutes
before 11 p.m., a customer walked out just as two men came in. The first man, later identified as
Jody Stark, was Anglo and had his shirt pulled up over his mouth and nose. Both Alma and Andy
identified Appellant, whom they recognized as one of their regular customers, as the second. 
Appellant held a gun in his hand and told Alma and Andy in Spanish that this was a hold-up. After
putting his arm around Andy’s upper chest, Appellant pointed the barrel of the gun at Andy’s neck
and demanded money. Andy recalled that the gun was a revolver with a brown handle. Appellant
then told Andy that he would blow his brains out if he did not give him money. Alma was afraid that
Appellant would kill Andy, so she opened the register. It contained less than $100 and Appellant
complained that the money was not enough. Stark was standing in the back of the store, but when
Alma took the money out of the register, he came up to the front and told her to give him the money. 
Alma complied but Appellant then pointed the gun at her head and asked her for expensive beer. 
Alma gave him a case of Smirnoff. Alma and Andy thought that the men were leaving, but
Appellant returned and told them if they called the police he would come back and kill them both. 
Andy called the police anyway and officers arrived within three minutes.
THE IDENTIFICATION PROCESS
            Alma never gave police the names of the robbers, a clothing description, or whether they
were Anglo or Hispanic. She did notice that Stark had a mole. Appellant had tattoos, but Alma did
not notice them. Andy did not tell police that he recognized Appellant and he did not give a facial
description. He did provide a clothing description--one man was wearing a black jacket and blue
jeans and that the other was wearing an undershirt beneath a flannel shirt and dark pants. 
            Socorro police officer Juan Carlos Gutierrez was dispatched as the backup unit to the
aggravated robbery that evening. He drove to the store, received a brief description of the
perpetrators, and then attempted to locate them. Within two hours, he found two suspects matching
the description he had been given. Stark was carrying a firearm with one remaining bullet. Cash
was also discovered on both suspects.
            Around 1 a.m., police took Alma to identify the two suspects. She was told they fit the
description, one of them had a gun, one matched the clothing description, and they had money on
them. Alma had no difficulty in recognizing the robbers because the officers had their spotlights
trained on them so that lighting in the area was good. The police gave her back the money taken in
the robbery, which was around $74-$76, about the same amount in the register at the time of the
robbery. No twenty dollar bills were in the register that evening and no twenties were found on the
suspects.
            DPS firearms examiner Joseph Corella testified that he test-fired the recovered weapon three
times and found the gun to be in working order. El Paso County Sheriff’s Department detention
officer Steven Elliot described the clothing worn by each suspect that evening at booking. Appellant
was wearing beige pants, black shoes, boots, and a black sweater. Stark was wearing black pants,
a blue shirt, white shoes, and a black jacket.
FAILURE TO PROVIDE BRADY MATERIAL
            In Point of Error No. One, Appellant complains that the State failed to provide him with
exculpatory evidence. During the punishment phase of trial, Appellant became aware of the
testimony of Pedro Mendez. Mendez, a regular customer, was the individual who had left the store
immediately before the robbery and who had seen the robbers enter. Appellant contended that
Mendez was unable to identify Appellant and that the State violated his right to a fair trial and due
process by failing to disclose this information pursuant to the court’s order.
            The trial court issued a standard discovery order that required the State to produce the names
and addresses of all witnesses which it reasonably anticipated it would call and any exculpatory or
mitigating evidence known to the State or in its possession. Appellant also filed a motion for
discovery requesting the same information. Appellant admitted that he was allowed to review the
State’s file and that he hand-copied its contents. 
            Mendez told Alma that he saw the robbery and consequently, he was listed as a potential
witness for the State in its supplemental witness list. Appellant does not dispute he received this
notice. In fact, he admitted that his investigator met with Mendez during which time Mendez
indicated he was not going to testify. Defense counsel disregarded his testimony.
            Mendez was not called as a witness during the guilt-innocence portion of Appellant’s trial
but he was called as a rebuttal witness by the State during the punishment phase. Mendez testified
that he did not remember the faces of the men walking into the store that night, and he denied having
been offered money to testify that he did. Mendez admitted that he knew Appellant’s father but he
had not discussed the case with him. The defense elicited testimony from Appellant’s father that
Mendez had told him that Alma was paying him to testify that Appellant robbed the store. Alma
denied having offered Mendez money. 
            Appellant contends that he didn’t realize that Mendez was the customer leaving the store
when the robbers were entering until the punishment phase when Mendez was called to testify. 
Appellant complained that had his counsel had this information prior to trial, the reliability of the
identifications by Alma and Andy could have been called into question because Mendez had known
Appellant’s family for years, had directly crossed paths with the robbers, and yet he could not
identify Appellant as one of the robbers.
            Under the Due Process Clause of the Fourteenth Amendment, a prosecutor has an affirmative
duty to turn over material, exculpatory evidence. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,
10 L.Ed.2d 215 (1963); Ex parte Kimes, 872 S.W.2d 700, 702 (Tex.Crim.App. 1993). Evidence
withheld by a prosecutor is “material” if there is a reasonable probability that, had the evidence been
disclosed to the defense, the outcome of the proceeding would have been different. United States
v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); Wyatt v. State, 23
S.W.3d 18, 27 (Tex.Crim.App. 2000). A “reasonable probability” is a probability sufficient to
undermine confidence in the outcome of the trial. Bagley, 473 U.S. at 682, 105 S.Ct. at 3383; Wyatt,
23 S.W.3d at 27. Thus, a due process violation occurs if a prosecutor: (1) fails to disclose evidence,
(2) favorable to the accused, (3) which creates a reasonable probability of a different outcome. 
Wyatt, 23 S.W.3d at 27.
            Appellant contends that the State failed to disclose Mendez’s inability to identify Appellant
as one of the robbers. The evidence came out at trial during the punishment phase when Mendez
was called as a rebuttal witness and the State was questioning him. The prosecutor asked him
whether he remembered having been asked two days earlier whether he recognized the perpetrators
in the robbery. This demonstrates that the State at least had notice of Mendez’s testimony on the
first day of trial. The first Wyatt prong showing that the State had knowledge of the information and
failed to disclose it is met.
            Second, Appellant claims that the testimony was favorable to him because his conviction was
based on the in-court identification by Alma and Andy and Mendez’s testimony could have
challenged the reliability of their identification. We disagree. Appellant offered no evidence that
the information was favorable to his case. Mendez testified that he did not remember the faces of
the robbers; he did not testify that Appellant was not one of them. The defense also argues that
Mendez knew Appellant and his family, but Mendez testified only to knowing Appellant’s father,
not Appellant. This information would not have been favorable to his defense, and Appellant failed
to meet the second prong of Wyatt.
            Further, Appellant has failed to show a reasonable probability that the outcome in his case
would have been different had the State disclosed the evidence. He must demonstrate that the
evidence was material in order to prevail on a Brady claim.
            At trial, both victims identified Appellant as the robber with the gun. Stark had a t-shirt
pulled up over his chin and nose; however, Appellant was wearing no disguise. Andy testified that
he got a good look at Appellant and both he and Alma recognized Appellant as a regular customer. 
Had Mendez testified at trial that he did not recall the faces of the robbers and the jury believed him,
his testimony would not have called into question their identifications. Appellant has failed to
satisfy the third Wyatt prong. The State’s failure to disclose Mendez’s testimony does not undermine
our confidence in the outcome of Appellant’s trial. See Bagley, 473 U.S. at 682, 105 S.Ct. at 3383;
Wyatt, 23 S.W.3d at 27. Point of Error No. One is overruled.
SUGGESTIVE IDENTIFICATION 
            In Point of Error No. Two, Appellant challenges what he characterizes as highly suggestive
identification procedures used as the basis for an in-court identification. Texas courts stringently
apply the contemporaneous objection rule in the context of improper identification. Without an
objection to an in-court identification or to testimony based on an impermissibly suggestive
identification procedure, no error is preserved. See Perry v. State, 703 S.W.2d 668, 671
(Tex.Crim.App. 1986)(finding that defendant failed to object or complain in the trial court about the
out-of-court identification procedure or the in-court identifications and that he also failed to show
any justification, cause, or excuse for his failure to complain or object in the trial court and had thus
waived the error on appeal); Ross v. State, 861 S.W.2d 64 (Tex.App.--Beaumont 1993, pet.
ref’d)(finding no complaint by defendant that either witness’s identification was tainted by overly
suggestive pretrial procedures on the part of the authorities and that both witnesses were permitted
to identify him during direct examination by the State); Van Zandt v. State, 932 S.W.2d 88, 94
(Tex.App.--El Paso 1996, pet. ref’d)(holding that defendant failed to preserve error by failing to
object when the victim identified him in court and testified regarding her identification, and his sole
objection came when the State offered the photographic line-up into evidence and after the deputy
stated that the victim had identified him from the photographic line-up).
            Alma made an in-court identification of Appellant without objection. She also testified
without objection regarding the circumstances of her out-of-court identification the night of the
robbery. Appellant did not voice his concern until his motion for directed verdict when he claimed
that the State had failed to prove he participated in the robbery and that Alma only made her out-of-court identification after police had told her that two suspects meeting the given description had been
found in possession of a gun and money. We conclude that Appellant failed to properly preserve
error. Point of Error No. Two is overruled.
SUFFICIENCY OF THE EVIDENCE
            In Point of Error No. Three, Appellant argues that the trial court erred in denying his motion
for directed verdict because the evidence was factually insufficient to prove that he robbed the store. 
A challenge to the trial court’s ruling on a motion for a directed verdict is a challenge to the legal
sufficiency of the evidence that supports the judgment. Valdez v. State, 993 S.W.2d 346, 353
(Tex.App.--El Paso 1999, pet. ref’d). We will construe Appellant’s argument to be both a challenge
to the legal and factual sufficiency of the evidence.
Standards of Review
            In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991), overruled on
other grounds, Paulson v. State, 28 S.W.3d 570 (Tex.Crim.App. 2000). This familiar standard gives
full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic to ultimate facts. Jackson, 443 U.S. at
319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility
to the witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d
418, 421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). 
Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are
rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. 
Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor
of the verdict. Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both
direct and circumstantial evidence cases. Geesa, 820 S .W.2d at 158. 
            In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand, or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder’s determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. In performing this review, we are to give due
deference to the fact finder’s determinations. See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact
finder is the judge of the credibility of the witnesses and may “believe all, some, or none of the
testimony.” Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Consequently, we may
find the evidence factually insufficient only where necessary to prevent a manifest injustice from
occurring. See Johnson, 23 S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App.
1997).
Applicable Law 
            A person commits aggravated robbery if he commits an offense of robbery as defined in
Section 29.02, and he: (1) causes serious bodily injury to another; (2) uses or exhibits a deadly
weapon; or (3) causes bodily injury to another person or threatens or places another person in fear
of imminent bodily injury or death. Tex.Penal Code Ann. § 29.03 (Vernon 2003). A deadly
weapon is defined as (1) a firearm or anything manifestly designed, made, or adapted for the purpose
of inflicting death or serious bodily injury; or (2) anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury. Tex.Penal Code Ann. § 1.07(17)(Vernon
Supp. 2004-05). 
Appellant’s Arguments
            Appellant contends that only Jody Stark’s clothing matched the description given to police
and that Stark had possession of the gun. He complains that Alma never told police that she
recognized him as a regular customer and that she failed to mention identifying moles and tattoos. 
He also argues that Alma identified him only after police had told her they found two suspects
matching the given description and found one in possession of a gun. Finally, he asserts that Andy
identified him only after being shown Appellant’s photograph in preparation for trial.
            Both Alma and Andy identified Appellant as one of the robbers, particularly the one holding
the gun. Both recognized him as a regular customer. Andy testified that he got a pretty good look
at Appellant during the robbery because the store was well-lit at night. Appellant was not wearing
a disguise or attempting to hide his face. He pointed the gun at both victims and threatened them
on more than one occasion. Alma testified that she was afraid that Appellant was going to shoot
Andy. 
            When the suspects were apprehended, Stark was wearing black pants, a blue shirt, white
shoes, and a black jacket. Appellant was wearing beige pants, black shoes, boots, and a black
sweater. Andy gave police only a clothing description of the robbers--that one man was wearing a
black jacket and blue jeans and that the other was wearing an undershirt under a flannel shirt with
dark pants--and not a facial description. Within approximately two hours, Alma was taken to
identify the suspects. She had no difficulty identifying the robbers. 
            After reviewing the evidence in a light most favorable to the verdict, we have determined that
the evidence is legally sufficient for a rational trier of fact to have found the essential elements of
Appellant’s participation in the aggravated robbery beyond a reasonable doubt. Both victims of the
robbery had an ample opportunity to observe Appellant in well-lit conditions. After the robbery
Appellant returned to threaten the victims about calling the police, so Alma and Andy had a second
opportunity to view him. Both made a positive in-court identification.
            After reviewing the evidence in a neutral light, we find the evidence factually sufficient to
support Appellant’s participation in the robbery and that the jury’s resolution of the issue was not
contrary to the overwhelming weight of the evidence. The jury, as the sole judge of the credibility
of the witnesses, obviously believed Alma and Andy’s testimony regarding the identity of the robber. 
While Appellant argued that his pretrial identification was the product of suggestive procedures, the
jury heard testimony regarding what the police told Alma before she made her identification. The
jury was allowed to give whatever weight it chose to the evidence. With regard to Appellant’s
argument that his clothing did not match Andy’s description, the jury could have reasonably inferred
that Appellant had changed clothes between the robbery and his apprehension. It is within the
province of the jury to judge the credibility of the witnesses’ identification of Appellant as the
robber, to resolve any inconsistencies, and to determine the weight to be accorded to their testimony. 
See Lee v. State, 51 S.W.3d 365, 369 (Tex.App.--Austin 2001, no pet.). We overrule Point of Error
No. Three.
DENIAL OF MOTION FOR MISTRIAL
            In Point of Error No. Four, Appellant complains that the trial court erred by denying his
motion for mistrial. During pretrial motions, the trial court granted Appellant’s request for a motion
in limine requiring witnesses to refrain from speaking about shots that were fired immediately before
or after the robbery. During trial, the State called Officer Juan Carlos Gutierrez to the stand. Before
Gutierrez testified, the attorneys approached the bench to discuss the order in limine. Defense
counsel asked the court to instruct the witness not to mention that shots were fired. The State
assured the court that the witness had been so instructed. Nevertheless, the following exchange
occurred:
Q.About how long after the dispatch did you find suspects that met the
description?
 
A.I believe it was in between an hour and 15 to an hour and 45 minutes after the
initial call.
 
Q.Tell us about that. Who -- where were you when you saw a possible match?
 
A.You mean when?
 
Q.Where were you located?
 
A.Where was I located?
 
Q.Yes.
 
A.I was patrolling the area due to another additional call we received. It was for
shots fired.

Defense counsel objected and a bench conference ensued. 
 
THE COURT: Did you not -- didn’t you tell him?
 
MR. AL-HANNA:I told him.
 
MR. VASQUEZ:The damage has been done, Judge.
 
MR. BRIGGS:I don’t think so.
 
THE COURT:I think it’s a totally unrelated incident. What do you want me
to do?

After the conference, defense counsel objected to the answer as non-responsive and the trial court
sustained the objection. Counsel then requested that the jury be instructed to disregard the statement,
and the trial court did so. Finally, counsel moved for mistrial which was denied.   
            Appellant reminds us that this was a case of aggravated robbery and that at the time the gun
was recovered, it had one remaining bullet. He claims that the jury was left with the impression that
the weapon had been fired at least five times, since the officer disclosed that shots were heard after
the robbery. This, he argues, inflamed the jury against him.
            We review a trial court’s denial of a mistrial under an abuse of discretion standard. Wood
v. State, 18 S.W.3d 642, 648 (Tex.Crim.App. 2000); Ladd v. State, 3 S.W.3d 547, 567
(Tex.Crim.App. 1999), cert. denied, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000).
Mistrial is an extreme remedy for prejudicial events occurring during the trial process. See Bauder
v. State, 921 S.W.2d 696, 698 (Tex.Crim.App. 1996). It is a device used to halt trial proceedings
when error is so prejudicial that expenditure of further time and expense would be wasteful and
futile. Ladd, 3 S.W.3d at 567. Thus, a trial court may properly exercise its discretion to declare a
mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but
would have to be reversed on appeal due to an obvious procedural error. Id. The determination of
whether a given error necessitates a mistrial must be made by examining the particular facts of the
case. Id. The asking of an improper question will seldom call for a mistrial, because, in most cases,
any harm can be cured by an instruction to disregard. Id. A mistrial is required only when the
improper question is clearly prejudicial to the defendant and is of such character as to suggest the
impossibility of withdrawing the impression produced on the minds of the jurors. Id.
            The trial judge sustained defense counsel’s objection to the officer’s testimony and instructed
the jury to disregard the prosecutor’s improper jury argument. When an instruction to disregard is
given, the trial court’s denial of a mistrial is error only when the argument is extreme, manifestly
improper, injected new and harmful facts into the case, or violated a mandatory statutory provision
and was thus so inflammatory that its prejudicial effect cannot be cured by a judicial instruction to
disregard. Long v. State, 823 S.W.2d 259, 267 (Tex.Crim.App. 1991), cert. denied, 505 U.S. 1224,
112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); Harris v. State, 866 S.W.2d 316, 326 (Tex.App.--San
Antonio 1993, pet. ref’d). If the instruction given can be said to have removed the prejudicial effect
of the improper comment, no error results from the overruling of a motion for mistrial. Washington
v. State, 822 S.W.2d 110, 118 (Tex.App.--Waco 1991), rev’d on other grounds, 856 S.W.2d 184
(Tex.Crim.App. 1993); see Long, 823 S.W.2d at 267. We find that the instruction to disregard cured
the improper comment. We overruled Point of Error No. Four and affirm the judgment of the trial
court.


October 7, 2004                                                           
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Panel No. 1
Larsen, McClure, and Chew, JJ.

(Do Not Publish)