**Wayne EAST, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69057.**

Court of Criminal Appeals of Texas, En Banc.

July 24, 1985.

---

Preston DeShazo, Dallas, for appellant.

Patricia Elliott, Dist. Atty. and Randy Dale, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

This is an appeal from a conviction for capital murder. Punishment was assessed at death.

In three grounds of error, appellant complains of the exclusion of three venirepersons over his objection. He argues that all

three individuals were improperly excused in violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).[1] Venireman Juan Jaramillo initially testified in response to the prosecutor's questions that he was against the death penalty and that he would answer the punishment questions in such a way to guarantee that a defendant would not be assessed the death penalty. During questioning by defense counsel, Jaramillo created some confusion by stating that he could consider the death penalty in a proper case, but that he would automatically vote against the imposition of capital punishment regardless of the evidence. The trial judge, in an attempt to clear up the confusion, asked the following:

"THE COURT: ... The attorneys have told you that there are a couple of questions that you would be asked, that the court would put these in writing if you find the defendant guilty. Then you might hear additional evidence regarding what punishment should be assessed. Of course, you understand, don't you, that if he's found guilty of capital murder then there are only two possibilities. That's life imprisonment or death.

"THE WITNESS: Yes, sir.

"THE COURT: Those are the only two possibilities. If you answer those two questions yes, then I have to by law, sentence this defendant to death.... If the evidence would otherwise warrant a finding of yes to both of those questions, are you telling the Court that you would nonetheless answer them no, that you would refuse to answer them yes because you would know that I would have to give him the death penalty? Is that what you are telling the Court?

"THE WITNESS: I still would be against the death penalty, sir.

"THE COURT: Okay, I understand you're against the death penalty. The question is not being in favor of or against the death penalty. The question is: Can you follow the law that I would give you, and the evidence, or would you distort the evidence and disregard evidence that you might otherwise accept to answer the questions in an untruthful way to yourself just so you could get around or circumvent the law that would require the imposition of the death penalty?

"THE WITNESS: No, I don't think I could follow you, sir.

"THE COURT: You would not follow the instructions ... that I would give you?

"THE WITNESS: No, sir."

Thereafter defense counsel again elicited from Jarimillo that regardless of what the testimony showed, he would vote against the death penalty. The State's challenge for cause was sustained by the court.

Venirewoman Helen Marie Koen initially voiced her opposition to the death penalty and then began equivocating as to how she would answer the two special issues. Finally, at the conclusion of the prosecutor's voir dire examination, she did state that regardless of whatever evidence was presented, she would automatically vote "no" on at least one of the questions in order to thwart the assessment of the death penalty. After defense counsel again presented the mechanics of the punishment phase of the trial and read to Koen the two special issues, Koen reiterated her general opposition to the death penalty. In an attempt to pin her down to the specifics, defense counsel asked the following:

"Q. Are you telling us that you could not follow the law as given by the Court?

"A. If that's what it's going to be, no.

"Q. And are you saying that you would automatically vote against the imposi-

---

1. We recognize that the "automatic" standard of *Witherspoon* has been modified by the United States Supreme Court's decision in *Wainwright v. Witt,* 469 U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). However, we do not find the application of *Witt* necessary to the disposition of this case.

tion of the death penalty regardless of the testimony brought—

"A. Yes.

"Q. —to you in court? No question about it?

"A. No.

"Q. And would the mandatory penalty of death or imprisonment for life affect your deliberations on the issues of fact as in State's Exhibit No. 1 there that would be submitted to you at the conclusion of the punishment hearing?

"A. Yes."

The trial court resumed the questioning and elicited from Koen that she would not answer the special issues based upon the evidence but would answer "no" on one or both of the questions in order to keep the defendant from receiving the death penalty. The trial court then sustained the State's challenge for cause.

Finally, venireman David Lee Hancock testified that he was opposed to the death penalty on religious grounds. Although he felt he could make an impartial decision as to a defendant's guilt or innocence, he could never vote in such a way as to inflict the death penalty because by executing the defendant, the State would be taking away the defendant's chance of possible forgiveness by God. He reiterated this belief in response to questioning by defense counsel:

"Q. My question is: Would that affect your deliberations—Assuming that you were convinced in your own mind that he had done it deliberately, that any defendant had done it deliberately— ... Assume that the State had proven to you beyond a reasonable doubt that this defendant, or any other defendant, had deliberately killed someone in the course of committing—or as that issue asks on State's Exhibit No. 1, proven to you deliberately, would that affect your deliberations, the fact that he would receive death or life?

.    .    .    .    .

"A. Yes, I (sic) would affect me in the sentencing phase. I could sentence

conscientiously to life imprisonment. I could answer the questions so that that would be his sentence. But I could not sentence him to execution, because that limits his possibility of being given forgiveness.

.    .    .    .    .

"A. ... I don't want to break any laws, but you're going to put me in a position where I will have to because even if I believe—You know, I'm going to have to answer one of these questions so that the judge will sentence him to life imprisonment.

Thereafter the trial court excused Hancock for cause.

■ We find no error in the trial court's excusal of these venirepersons for cause. *Witherspoon v. Illinois,* supra, provides that a prospective juror should not be excused simply because he or she voiced a general objection to the death penalty. Justice Stewart, writing for the majority in *Witherspoon,* noted:

"We repeat, however, that nothing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made unmistakably clear (1) that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, ...." *Witherspoon v. United States,* 391 U.S. at 523, 88 S.Ct. at 1777, footnote 21.

Each of these three prospective jurors clearly stated that they would disregard the evidence presented and vote in such a way as to thwart the assessment of the death penalty. The trial court acted properly in excusing these individuals. Appellant's first, third and fourth grounds of error are overruled.

■ In his second ground of error appellant argues that the trial court erred in overruling his challenge for cause of venirewoman Martha Carter. The record shows that after the trial court overruled

appellant's challenge for cause as to Carter, appellant used his seventh peremptory strike on her. Thereafter appellant used his remaining eight peremptory strikes. Appellant then requested two additional peremptory strikes which the trial court granted. However, immediately after appellant received these additional strikes, the next juror was accepted by both sides and the jury panel was complete. Thus the appellant never exhausted his peremptory challenges nor was he forced to accept any juror who was unacceptable to him. No reversible error is shown. *White v. State*, 629 S.W.2d 701, 707 (Tex.Cr.App.1981) (and cases cited therein.)

In his fifth ground of error, appellant argues that the trial court erred in admitting testimony by State's witness Bonnie Covington, that prior to the commission of the instant offense, appellant and his companion, Dee Dee Martin, joined Covington and her boyfriend in "shooting up a lude." Appellant was charged with murdering the deceased, an elderly Abilene woman, while robbing her and burglarizing her home. Bonnie Covington testified over appellant's objection that appellant and Dee Dee Martin came to her apartment at approximately 5:00 a.m. on the morning of the offense and stayed until 5:50 a.m. During the time they were at her apartment, appellant and Martin melted down a Preludin capsule and injected it. After "shooting up" the "lude," appellant told Covington and her boyfriend about a big deal he had to do and part of it concerned "bumping someone off."

■ Initially, we find no error in the admission of this extraneous offense in that Dee Dee Martin testified to the same incident of "shooting up a lude" without objection later in the trial. It has long been the rule that improper admission of evidence does not constitute reversible error if the same facts were proved by evidence not objected to. *Brasfield v. State*, 600 S.W.2d 288, 296 (Tex.Cr.App.1980).

■ Martin's testimony also indicates that the injecting of the Preludin was res gestae of the instant offense in that she testified that immediately after leaving Covington's apartment, she and appellant proceeded to the victim's house and committed the instant offense.

In *Albrecht v. State*, 486 S.W.2d 97, at 100 (Tex.Cr.App.1972), this Court held that evidence of an extraneous offense committed by the accused is admissible:

"[t]o show the context in which the criminal act occurred—what has been termed the 'res gestae'—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence." (Footnote omitted).

In the instant case we find that the appellant's act of injecting Preludin was so intertwined with the instant offense as to make it admissible. This Court's recent opinion in *Mitchell v. State*, 650 S.W.2d 801, 811 (Tex.Cr.App.1983), another capital murder case, supports our holding. Relying on the res gestae exception as set out in *Albrecht*, we held that testimony that soon after the robbery-murder in *Mitchell*, the defendants used the fruits of the crime to purchase heroin and inject it was properly admitted.

Appellant argues in his brief that *Bush v. State*, 628 S.W.2d 441 (Tex.Cr.App.1982) controls and mandates reversal of his conviction. *Bush*, however, is distinguishable in that the objectionable testimony admitted into evidence in that case merely portrayed appellant as a drug addict. No relationship was shown between appellant's drug addiction and the commission of the offense and thus the evidence of Bush's drug addiction did not aid in establishing the context of his actions in shooting the victim. We find no error. Appellant's fifth ground of error is overruled.

■ In his tenth ground of error, appellant argues that the trial court erred in allowing State's witness Sonora Henry to testify that on one occasion she saw appellant beating his wife and on another occasion she saw appellant hitting a man at a

gas station with a stick after the two men got into an argument. Appellant argues this testimony should not have been admitted because there was no evidence that these acts constituted criminal acts. Our review of the record indicates that appellant offered no objection to this testimony when it was offered at trial. Thus nothing is presented for our review. *Esquivel v. State*, 595 S.W.2d 516 (Tex.Cr.App.1980).

In his eleventh ground of error, appellant contends the trial court erred in admitting witness Shirley Mae Campbell's opinion as to appellant's propensity for future violence because her opinion was based on hearsay and not her personal knowledge. In order to answer properly appellant's contention it is necessary for us to set out a large portion of Campbell's testimony. Initially Campbell testified that she had known the appellant "a long time." Thereafter the following occurred:

"Q. Do you know his wife, Tammy?

"A. Yes, ma'am.

"Q. Have you ever seen the two of them together?

"A. Yes, ma'am. Several times.

"Q. Have you seen how he treated her?

"A. Yes, ma'am.

"Q. And how have you seen him treat her?

"A. Well, he fight her.

"Q. When you say 'fight her,' what do you mean?·

"A. Well, they be fighting, but she just don't be fighting him. It'd be a fight—

"Q. Be a one-way thing?

"A. It'd be a fight, but he'd be doing all the fighting.

"Q. What would he do?

"A. Well, he'd be slapping on her, you know, hitting her.

"Q. With his hands or his fists?

"A. With his hands and fists.

"Q. Where would he be hitting her?

"A. In the face. Well, wherever he could hit her.

"Q. Would she ever fall down?

"A. Sometimes.

"Q. Did you ever see him use his feet?

"A. No, ma'am. Not just really.

"Q. How big is Tammy? I mean, is she a sizeable young woman?

"A. She's kind of short. She weight (sic) about 130, 135.

"Q. Ms. Campbell, knowing the defendant as you have, as long as you have, and your observations, have you formed an opinion as to the probability that Wayne East would be violent in the future?

"MR. ROBERTSON: Your Honor, again, we would object to that as not—no proper predicate has been laid; it invades the province of the jury; denies the defendant a fair trial; is repetitious of other testimony, preceding testimony in this case.

"THE COURT: I overrule the objection.

"MISS ELLIOTT: Q. Do you have an opinion as to whether Wayne East would be violent in the future?

"THE WITNESS: A. Well, from what—I can only speak from what I've heard, because I wasn't here when the crime was committed that he's being tried for.

"MR. ROBERTSON: Of course, your (sic) Honor, we would again object. If she does not have an opinion based upon her own knowledge, we object to it on that, also.

"THE COURT: Okay, Ma'am, you just need to—I overrule the objection. But you need to answer the question specifically, the specific question.

"MISS ELLIOTT: Q. I am asking you—I will ask you first, Ms. Campbell, if you have an opinion. And answer yes or no.

"THE WITNESS: A. Yes, I have an opinion.

"Q. And what is your opinion based upon what you know personally, you've seen this defendant do, and what you've heard?

"A. Well, I—I feel like that he would be a threat to society."

The prosecutor then passed the witness to defense counsel who stated that he had no questions for the witness.

■ It is the rule in this State that a lay witness is competent to give opinion testimony as to the issue raised in Article 37.-071(b)(2), V.A.C.C.P., when the record shows that the witness has sufficient first-hand familiarity with the defendant's personal history. *Esquivel v. State*, 595 S.W.2d 516, 527 (Tex.Cr.App.1980); *Cass v. State*, 676 S.W.2d 589 (Tex.Cr.App.1984).

■ While we recognize that such an opinion rendered solely on the basis of hearsay would indeed be error, we find in the instant case that no error occurred. Our reading of the pertinent portion of Campbell's testimony, which we have set out above, indicates that her opinion as to appellant's future conduct was not based solely upon hearsay but was in fact based upon her personal observation of appellant's behavior. Because she knew the appellant, she was in a position to express the opinion that she did. *Russell v. State*, 665 S.W.2d 771, 779 (Tex.Cr.App.1983). Furthermore, we note that the prosecutor's final question, the one that was finally answered by the witness, asked the witness to base her opinion on *both* her personal observation *and* what she had heard.

■ In a related ground of error, appellant complains that the trial court erred in admitting the testimony of Abilene police officers Wade, Bradshaw, Carter, Knight and Franklin and former adult probation officer Dalbert. Appellant argues that the opinion testimony of these individuals was inadmissible in that their opinions invaded the province of the jury, no proper predicate had been laid and the witnesses were not shown to be qualified to make such a prediction. Although this is a multifarious ground of error and thus presents nothing for review, we will address appellant's contentions.

■ Each of these witnesses testified that he was personally acquainted with appellant and based upon this personal knowledge of appellant was of the opinion that appellant would continue to commit criminal acts of violence that would constitute a continuing threat to society. We approved testimony very similar to this in *Russell v. State*, supra, wherein we held that the defendant's trial objection to the qualifications of the three police officers, one district attorney's investigator, and a convicted felon went to the weight to be given the testimony and not to the admissibility of the testimony. We further reasoned, relying on *Esquivel v. State*, supra and *Simmons v. State*, 594 S.W.2d 760 (Tex.Cr.App.1980), that since each of the witnesses testified that he knew the defendant, each witness was in a position to express an opinion on the issue of appellant's probability for future violence. We adopt the same reasoning in the instant case. Appellant's sixth ground of error is overruled.

In his seventh ground of error, appellant argues that the trial court erred in admitting into evidence statements made by appellant to police officers when they served him with the indictment for this offense. Appellant maintains that since there were no *Miranda* warnings given and appellant was in custody at the time, his statements were inadmissible. During the punishment phase of the trial Officer Roger Berry testified that he and Detective Frymire served the capital murder indictment on appellant while he was incarcerated in the county jail. Over appellant's objection, Berry testified to the following:

> "THE WITNESS: That's correct. We served the indictment on the defendant and advised him that he had been indicted for capital murder. He was laughing at the time. I told him that he might consider it funny now but it probably would not be funny in the future, and at that time he looked up at me and said 'I'll get you,' and continued to laugh."

Article 38.22, Section 5 V.A.C.C.P., states:

> "Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in

compliance with Articles 16.03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, *or of a statement that does not stem from custodial interrogation,* or of a voluntary statement, whether or not the result of custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law."

Clearly the circumstances surrounding the making of the statement by appellant show that it did not stem from any type of interrogation, even though appellant was in custody. Thus under Article 38.22, Section 5, supra, the statement was admissible. We find no error in the trial court's action. *Loar v. State,* 627 S.W.2d 399, 400 (Tex.Cr.App.1981); *Lindley v. State,* 635 S.W.2d 541, 544 (Tex.Cr.App. 1982); *Stevens v. State,* 671 S.W.2d 517, 520 (Tex.Cr.App.1984).

In his twelfth ground of error, appellant argues that the trial court erred in allowing Lt. Jack Dieken of the Abilene police department to testify regarding appellant's arrest as a juvenile for sodomy. Lt. Dieken testified over appellant's objection that he had arrested appellant in October of 1971, when appellant was sixteen years old, after a five-year-old boy reported that appellant had engaged in rectal sodomy with him. Appellant argues that V.T.C.A., Family Code, Section 51.13, prohibits introduction of any evidence regarding offenses committed by an individual while a juvenile and thus reversible error was committed.

We disagree. V.T.C.A., Family Code, Section 51.13(b), provides that:

"The *adjudication* or *disposition* of a child or *evidence adduced in a hearing under this title* may be used only in subsequent proceedings under this title in which the child is a party or in subsequent sentencing proceedings in criminal court against the child to the extent permitted by the Texas Code of Criminal Procedure, 1965." (Emphasis added)

Initially we note that Section 51.13, supra, is inapplicable to the present case.

"Subsection (b) is a statement of the traditional confidentiality of *juvenile court proceedings and the evidence used in those proceedings.* Evidence introduced in juvenile court proceedings may only be used in subsequent juvenile court proceedings or in subsequent sentencing proceedings in criminal court to the extent permitted by the Texas Code of Criminal Procedure." Dawson, "Delinquent Children and Children in Need of Supervision: Draftman's Comments to Title 3 of the Texas Family Code," 5 Texas Tech.L.Rev. 509 at 532 (1974). (emphasis added).

The evidence introduced at trial does not show if there was ever any kind of adjudication, disposition or even if there was any type of juvenile hearing concerning the offense. All that Lt. Dieken testified to was that he arrested appellant for the offense. There was no testimony concerning any further juvenile proceedings.

Furthermore, we note that three other witnesses, including the victim, testified without objection concerning appellant's involvement and arrest for the offense. It has long been the rule that improper admission of evidence does not constitute reversible error if the same facts were proved by evidence not objected to. *Brasfield v. State,* supra.

Finally, Article 37.071, V.A.C.C.P., provides that during the punishment phase of a capital murder trial evidence may be presented as to any matter that the trial court deems relevant to sentence. This has been construed to allow the admission into evidence of unadjudicated extraneous offenses. *Williams v. State,* 622 S.W.2d 116 (Tex.Cr.App.1981); *Rumbaugh v. State,* 629 S.W.2d 747 (Tex.Cr.App.1982); *Smith v. State,* 683 S.W.2d 393 (Tex.Cr.App.1984); *Thompson v. State,* 691 S.W.2d 627 (Tex. Cr.App.1984). We find no error.

In his eighth and ninth grounds of error, appellant complains of the admission into evidence during the punishment phase of the trial of two more extraneous offenses committed by appellant. Officer Ed Carter testified over appellant's objection

that on May 26, 1981, he arrested appellant for burglary of a residence belonging to one Leslie Lane after Lane identified appellant as the man seen breaking into his residence. We find that appellant has not preserved anything for review in this instance in that immediately following Officer Carter's testimony, Leslie Lane testified without objection that he saw appellant breaking into his home on the morning of May 26, 1981, and identified him later in the day when the police apprehended him. Improper admission of evidence does not constitute reversible error if the same facts were proved by evidence not objected to. *Brasfield v. State,* supra.

Evidence of a second extraneous offense was admitted over appellant's objection when Officer Greg Knight testified that on January 14, 1981, while appellant was incarcerated in the Jones County Jail, appellant gave a written statement confessing to the theft of railroad ties from the Fort Worth and Denver Railroad.

■ As we noted in the prior ground of error, Article 37.071, V.A.C.C.P., provides that during the punishment phase of a capital murder trial, evidence may be presented as to any matter that the trial court deems relevant to sentence. This has been construed to allow the admission into evidence of unadjudicated extraneous offenses. *Williams v. State,* supra; *Rumbaugh v. State,* supra; *Smith v. State,* supra; *Thompson v. State,* supra. In *Jurek v. State,* 522 S.W.2d 934, 939 (Tex.Cr.App. 1975), this Court wrote that Article 37.071, V.A.C.C.P., enables a jury to consider several factors in determining the likelihood that a defendant would be a continuing threat to society. One of these factors is whether the defendant has a "significant criminal record." This includes the range and severity of a defendant's prior criminal conduct. Appellant argues that these extraneous offenses should not have been admitted in that they involved nonviolent acts. Under our case law, however, violence has never been a prerequisite for admission under Article 37.071, supra. We find the evidence of the extraneous offenses was properly admitted. Appellant's eighth and ninth grounds of error are overruled.

■ In his thirteenth and fourteenth grounds of error, appellant contends the trial court erred in not defining the term "deliberately," nor in granting his special requested instruction which contained a definition of "deliberately." This same contention has been addressed by this Court on several occasions. In *King v. State,* 553 S.W.2d 105, 107 (Tex.Cr.App. 1977), this Court held that no special definition of the term was required and the term should be construed according to its common meaning. See also *Hawkins v. State,* 660 S.W.2d 65, 81 (Tex.Cr.App.1983). In *Russell v. State,* 665 S.W.2d 771, 780 (Tex. Cr.App.1983), the appellant proffered a special requested charge very similar to the one proposed in the instant case. After careful analysis, the Court found that it would not have been proper to submit the proposed charge to the jury and again held that the term "deliberately" should be construed by the jury according to its common meaning. We hold likewise. These grounds of error are overruled.

In his fifteenth ground of error, appellant argues that the trial court erred in trying appellant for capital murder because the count of the indictment submitted to the jury only alleged a first degree murder and not a capital murder. No motion to quash the indictment was filed and appellant is bringing forth this contention for the first time on appeal.

The second count of the indictment alleged that the appellant:

"did then and there *intentionally and knowingly* cause the death of an individual namely, Mary Eula Sears, by stabbing and cutting her with a knife; and ... did then and there intentionally cause the death of the said Mary Eula Sears in the course of committing the offense of robbery of and against the said Mary Eula Sears, ..." (emphasis added).

The application paragraph of the court's charge tracked the indictment with the ex-

ception that it only included the culpable mental state of "intentionally".

▇▇▇ Appellant argues that since V.T. C.A., Penal Code, Section 19.03(a)(2), only contains the culpable mental state of "intentionally", the inclusion of "knowingly" renders the indictment defective. This same contention was overruled in *Wilder v. State,* 583 S.W.2d 349, 361 (Tex.Cr.App. 1979), vacated on other grounds, 453 U.S. 902, 101 S.Ct. 3133, 69 L.Ed.2d 987 (1981). We now adopt the same reasoning. This ground of error is overruled.

In his sixteenth ground of error, appellant argues that the court erred in failing to submit to the jury the fact question as to whether the State's witness Dee Dee Martin was an accomplice. In his seventeenth ground, he argues that by instructing the jury that witness Martin was an accomplice witness as a matter of law, the trial court made an impermissible comment on the weight of the evidence.

▇▇▇ The court's charge instructed the jury that Dee Dee Martin was an accomplice witness as a matter of law. In stating his objection to the portion of the charge instructing the jury that Dee Dee Martin was an accomplice witness as a matter of law, appellant merely argued that the charge "fails to correctly state the law applicable to the facts in evidence in this matter." We note initially that appellant's objection at trial does not comport with the argument he is now making on appeal. Thus the issue is not preserved for review. *Euziere v. State,* 648 S.W.2d 700, 703 (Tex.Cr.App.1983).

▇▇▇ Furthermore, the record clearly shows that Martin was under indictment for the same offense as appellant, although her indictment also included a count alleging murder during the course of a robbery, a count alleging murder during the course of a burglary and a count alleging burglary. It has long been the rule that when one is a co-indictee and testifies for the State against an accused, he or she is an accomplice witness as a matter of law. *Kerns v. State,* 550 S.W.2d 91 (Tex.Cr.App.

1977); *Creek v. State,* 533 S.W.2d 794 (Tex. Cr.App.1976); *McCloud v. State,* 527 S.W.2d 885 (Tex.Cr.App.1975); *Hendricks v. State,* 508 S.W.2d 633 (Tex.Cr.App.1974). Thus we find that the trial court properly instructed the jury. Appellant's seventeenth and eighteenth grounds of error are overruled.

In his final ground of error, appellant maintains that this Court is mandated by the Eighth Amendment as applied to the states through the Fourteenth Amendment to review the proportionality of appellant's sentence with the sentences imposed in similar cases.

In *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the Supreme Court held that the Eighth Amendment does not require as an invariable rule in every case that a state appellate court, before it affirms a death sentence, compare the sentence in the case before it with the penalties imposed in similar cases if requested to do so by the defendant. The opinion of the Supreme Court specifically addressed the Texas death penalty scheme:

"That *Gregg* and *Proffitt* did not establish a constitutional requirement of proportionality review is made clearer by *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), decided the same day. In *Jurek* we upheld a death sentence even though neither the statute, as in Georgia, nor state case-law, as in Florida, provided for comparative proportionality review. Justices Stewart, POWELL, and STEVENS, after emphasizing the limits on the jury's discretion, concluded that:

'Texas' capital sentencing procedures, like those of Georgia and Florida, do not violate the Eighth and Fourteenth Amendments. By narrowing its definition of capital murder, Texas has essentially said that there must be at least one statutory aggravating circumstance in a first-degree murder case before a death sentence may even be considered. By authorizing the defense to bring before the jury at the separate sentencing hearing whatever

mitigating circumstances relating to the individual defendant can be adduced, Texas has ensured that the sentencing jury will have adequate guidance to enable it to perform its sentencing function. By providing prompt judicial review of the jury's decision in a court with statewide jurisdiction, Texas has provided a means to promote the evenhanded, rational, and consistent imposition of death sentences under law. Because this system serves to assure that sentences of death will not be 'wantonly' or 'freakishly' imposed, it does not violate the Constitution.' Id., at 276, 96 S.Ct., at 2958.

"That the three Justices considered such appellate review as Texas provided 'a means to promote the evenhanded, rational and consistent imposition of death sentences,' *ibid.*, is revealing. First, it makes plain that, at least in light of the other safeguards in the Texas statute, proportionality review would have been constitutionally superfluous. Second, it suggests that the similarly-worded references to appellate review in *Gregg* and *Proffitt* were focused not on proportionality review as such, but only on the provision of some sort of prompt and automatic appellate review. The concurring opinion expressing the views of three other Justices sustained the Texas statute by focusing solely on the limitations on the jury's discretion, without even mentioning appellate review. In view of *Jurek*, we are quite sure that at that juncture the Court had not mandated comparative proportionality review whenever a death sentence was imposed." 465 U.S. at ——, 104 S.Ct. at 878, 879. (Footnotes omitted.)

▌ We decline appellant's invitation to review the proportionality of his sentence. Appellant's eighteenth ground of error is overruled.

The judgment is affirmed.

TEAGUE, J., dissents.

CLINTON, J., not participating.