TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00587-CR







Lance Gerhard Edwards, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0935884, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING







A jury found appellant Lance Gerhard Edwards guilty of burglary of a habitation. 
See Tex. Penal Code Ann. § 30.02 (West 1994 & Supp. 1999). (1) After finding that Edwards had
a previous felony conviction, the jury assessed punishment at imprisonment for sixty-eight years
and a $5000 fine. We will affirm.


Primary Offense

On the night of May 15, 1993, Michelle Campbell was babysitting the infant
daughter of Michael and Susan Dell at the Dell residence in Austin. Campbell testified that she
received two unusual telephone calls that night. The first caller asked if the Dells were home. 
Campbell told him they were not, identified herself, and took a message for the Dells to call a Mr.
Thompson at a telephone number left by the caller. The second caller hung up when Campbell
answered. Shortly after the second call, Campbell heard a loud noise that seemed to come from
the downstairs exercise room. Campbell went to the top of the stairs, and from this vantage point
saw a man dressed in black and wearing a black knit stocking mask standing in front of the
exercise room door. She rushed to the nursery, got the baby, and locked herself and the child in
a bathroom closet. Campbell could hear the sounds of a door being broken and of file cabinets
being opened in the upstairs study. Then, she heard glass breaking and the house became silent. 
Campbell left the closet and summoned the police.

The burglar had ransacked the master bedroom and upstairs study before leaving,
apparently through a broken window in the master bedroom. Among the items taken by the
burglar were cash, jewelry, and Susan Dell's personal organizer. (2) Investigating officers, who
suspected that the unusual telephone calls were connected to the burglary, determined that the
"Thompson" telephone number was not active. They also learned from the records of an Austin
cellular telephone company that two calls had been made from Austin to the Dell residence at 9:46
and 9:48 p.m. using a cell phone billed to Tanya Williams in Houston. Williams, who was
Edwards's girlfriend at the time of the burglary, testified that Edwards bought the cell phone for
her in early May 1993. Edwards borrowed the phone on May 15, telling her that his own cell
phone was broken. Edwards also told Williams that he and a friend were going to Austin that day
for a track meet.

On August 30, 1993, police executed a search warrant at a Houston house Edwards
shared with two other persons. Susan Dell's organizer and some of her jewelry were found in the
bedroom in which Edwards was sleeping when the police arrived.


Other Burglaries

Using cellular telephone records and other evidence, investigators ultimately
connected Edwards to a series of burglaries in affluent neighborhoods during the summer of 1993. 
Evidence with respect to four of these other burglaries was introduced in evidence, as was
evidence of an earlier burglary for which Edwards had been convicted.

Shortly after 10:00 p.m. on May 29, 1993, police responded to a burglar alarm at
the home of Herb and Jean Kelleher in Olmos Park, a San Antonio suburb. An intruder had
entered the house through a window and ransacked the master bedroom, but no property was
shown to be missing. Telephone company records showed that Williams's cell phone was used
to make three local calls to the Kelleher house between 9:47 and 10:09 p.m. on the night of the
burglary. Williams testified that she did not use her cell phone in San Antonio on May 29. 

Olmos Park police were called to the home of Mrs. Elizabeth Maddox on May 30,
1993. Maddox had returned from an out-of-town trip to discover that her house had been
burglarized the previous night. A window in the master bedroom was broken and jewelry was
missing. Four local calls were made to the Maddox house from Williams's cell phone between
10:20 and 11:02 p.m. on May 29. Some of Maddox's stolen jewelry was found in Edwards's
house during the August 30 search.

The burglar alarm at the home of Dr. Kenneth Altshuler in Dallas went off at 10:43
p.m. on July 29, 1993. An intruder had entered the house through a broken rear window,
rummaged through the master bedroom, and taken jewelry and watches. The burglar cut himself
on the broken window glass and several bloodstained items were seized by the police. Later DNA
tests of these blood samples showed that they matched Edwards's blood. Someone using
Williams's cell phone called the Altshuler house from Dallas five times between 8:26 and 10:15
p.m. on the night of the burglary. Williams testified that she did not use her cell phone in Dallas
on July 29.

On August 14, 1993, a burglar entered the residence of David and Patricia Danosky
in the Dallas suburb of Highland Park through a broken window. The burglary was discovered
by the Danosky's daughter at about 10:30 p.m. Her parents' clothes were scattered about their
bedroom and jewelry had been stolen. Williams's cell phone was used to call the Danosky
residence from Dallas at 9:40 p.m. on August 14. Once again, Williams testified that she did not
make this call. Jewelry stolen during the Danosky burglary was found during the search of
Edwards's house. In addition, a two-way radio apparently left behind by the burglar was traced
to a dealer in Houston who testified that he sold the radio to Edwards in June 1993.

Three years before the burglaries discussed above, on June 29, 1990, Sugar Land
police responded to a robbery call at the residence of Jake Kamin. Edwards was seen running
from the house by a police officer, and was stopped minutes later as he and another man drove
away from the scene. A cellular phone and two-way radios were found in the suspects' car. The
cell phone belonged to Edwards, and had been used to make several calls to the Kamin residence
two weeks before the burglary. The phone was also used to call a house in the same
neighborhood about thirty minutes before the burglary. Edwards was convicted of this burglary
in 1991.


Factual Sufficiency

Edwards contends the evidence is factually insufficient to support a finding beyond
a reasonable doubt that he was the person who burglarized the Dell's residence or who committed
the other robberies introduced in evidence. By challenging only the factual sufficiency of the
evidence, Edwards effectively concedes that it is legally sufficient to sustain his conviction. See
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd as untimely filed) (factual
sufficiency review begins with presumption evidence was legally sufficient). When conducting
a factual sufficiency review, the evidence is not viewed in the light most favorable to the verdict. 
Instead, all the evidence is considered equally, including the testimony of defense witnesses and
the existence of alternative hypotheses. Orona v. State, 836 S.W.2d 319, 321 (Tex. App.--Austin
1992, no pet.). A verdict will be set aside for factual insufficiency only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone, 823 S.W.2d at 381.

Edwards argues that the evidence does not support the jury's verdict because
Campbell could not identify him as the man she saw in the Dell's house and because no physical
evidence placed him there. There was, however, ample circumstantial evidence of Edwards's
guilt. Edwards offered no explanation for his possession of property taken from the Dell
residence. The unexplained possession of property recently stolen during a burglary is alone
sufficient to support a conviction. See Hardesty v. State, 656 S.W.2d 73, 76 (Tex. Crim. App.
1983). The calls from Williams's cell phone also link Edwards to the Dell burglary, and to the
other, similar burglaries in San Antonio and Dallas. Edwards used a cell phone in a similar
manner when he burglarized the Kamin residence three years before the charged offense.

Edwards's brief contains no argument in support of his claim that the State did not
prove his guilt of the extraneous burglaries. Edwards's conviction for the Kamin burglary
obviously proved his guilt of that offense. The use of Williams's cell phone and Edwards's
unexplained possession of stolen property support a finding that he committed the Olmos Park
burglaries. Similar evidence connects Edwards to the Dallas burglaries. In addition, a two-way
radio sold to Edwards was found in one of the houses burglarized in Dallas, and his blood was
found in the other.

The evidence is factually sufficient in all respects. The jury's verdict is not so
against the great weight of the evidence as to be manifestly unjust. Points of error eighteen,
nineteen, and twenty are overruled.


Admission of Extraneous Offenses

Edwards contends the State should not have been permitted to offer evidence
regarding the other burglaries. At trial, Edwards objected that the other offenses were irrelevant
except to show his propensity to commit burglaries, and thus were inadmissible under Texas Rule
of Evidence 404(b). He also objected that any probative value the evidence might have was
outweighed by the danger of unfair prejudice. See Tex. R. Evid. 403.

The district court ruled that the other burglaries were admissible to prove
Edwards's identity as the person who burglarized the Dell residence. Other offenses by the
accused may be admitted to prove his identity as the perpetrator of the charged offense if there
are distinguishing characteristics common to the charged and uncharged offenses that earmark
them as the defendant's handiwork. See Beets v. State, 767 S.W.2d 711, 740 (Tex. Crim. App.
1987). Edwards acknowledges this principle in his brief, but offers no argument why it does not
apply in this case. Nor does he explain why, if the other offenses were relevant to prove his
identity, the evidence should nevertheless have been excluded on the ground of unfair prejudice. 
We will not make Edwards's arguments for him. See Tex. R. App. P. 38.1(h). Points of error
five, six, and seven are overruled.


Residence Search

Edwards contends the evidence seized during the search of his house should have
been suppressed because the affidavit supporting the issuance of the search warrant contained
misrepresentations of material facts. See Franks v. Delaware, 438 U.S. 154 (1978). To prevail
on a Franks claim, the defendant must show by a preponderance of the evidence that the
supporting affidavit contains a false statement material to the finding of probable cause, and that
the affiant made the false statement intentionally or with a reckless disregard for the truth. Id.
at 156. Under Franks, a probable cause affidavit need not be truthful in the sense that every fact
recited must be correct, but only in the sense that the facts stated were believed or appropriately
accepted by the affiant as true. Id. at 164-65. 

The affiant in this cause was Highland Park police officer Marshall Bearor. 
Contained in his five-and-one-half page affidavit was a paragraph stating that Edwards's parole
officer had told him that Edwards was operating a gold and jewelry business from his home under
the name "Lance's Gold." Edwards urges that the statement was false, citing an affidavit from
the parole officer attached to his motion to suppress. In the affidavit, the parole officer states that
she did not tell Bearor that Edwards ran his business from his home. The parole officer did not
testify, nor was her affidavit introduced in evidence. Even if her denial is deemed to be in
evidence, the district court was not obliged to believe it. See Alvarado v. State, 853 S.W.2d 12,
23 (Tex. Crim. App. 1993). Bearor reaffirmed the truth of his affidavit at the hearing. 

Bearor's affidavit also stated that he had been told by a Village police officer that
Edwards had sold over $93,000 worth of goods to a Houston coin dealer, that Edwards had given
a copy of a sales tax permit in his name to the coin dealer, and that the officer had been informed
by the comptroller's office that this permit was "bogus." Edwards complains that the use of the
word "bogus" falsely implied that the permit was a counterfeit. He notes that Bearor testified at
the hearing that he learned from the comptroller's office after the warrant was executed that a
sales tax permit had been issued to Edwards, but that it had expired.

Whether an expired sales tax permit can properly be called bogus is a question we
need not answer. It is undisputed that Bearor was told by the Village officer that the permit was
bogus, and there is no basis in the record for concluding that Bearor should not have believed this
information. To the contrary, Bearor testified (and the affidavit states) that Bearor's partner also
contacted the comptroller's office and was told that no sales tax permit had been issued to
Edwards or to "Lance's Gold."

Edwards cites two other statements in the affidavit that he claims were false, but
he does not refer to any evidence in the record to support this claim. Edwards fails to
demonstrate by a preponderance of the evidence that the affiant deliberately or recklessly made
material misrepresentations of fact in the search warrant affidavit. Point of error eight is
overruled.

The warrant was issued to search for evidence regarding the Danosky burglary. 
In his ninth point of error, Edwards asserts that the affidavit did not state probable cause to
believe he committed that offense. Edwards does not identify any particular deficiency in the
affidavit or offer any other argument to support this assertion. Point of error nine is overruled.

Edwards also urges that the police seized evidence that was outside the scope of
the search authorized by the warrant. Edwards's argument in support of this contention, however,
merely reasserts the inadmissibility of the extraneous burglaries under rule 404(b). Edwards's
brief contains no argument pertinent to the point of error. Accordingly, point of error eleven is
overruled.

In a related point, Edwards contends the officers unlawfully searched Tanya
Williams's purse, which was in the house when the search warrant was executed. He urges that
the officers had no probable cause to search the purse, adding that the purse was in any event
outside the scope of the warrant. Edwards claims that cellular phone bills found in the purse were
used against him at trial, but the record does not support this claim. Absent any showing that
evidence found in the purse was admitted at trial, we need not decide whether the search of the
purse was lawful. Point of error twelve is overruled.

Finally, Edwards contends the evidence seized during the residence search should
have been suppressed because "the circumstances surrounding the execution of the warrant were
so extreme and pervasive as to constitute unlawful law enforcement activity and irreparably taint
any evidence . . . ." Edwards testified that the police executed the search warrant at 5:00 a.m.,
damaged the fence around his house, broke down the door and entered the house without
announcing themselves, and detained him in handcuffs for several hours while the search was
conducted.

A motion to suppress complaining of the manner in which the officers executed the
search warrant was one of seven motions to suppress Edwards filed on the day trial began. (3) 
Edwards testified as noted above during a brief hearing on these motions conducted before jury
selection began, but the court did not rule at that hearing on this or any other motion to suppress. 
Although the court heard further testimony on other motions to suppress during the trial, and
expressly overruled those motions, Edwards does not cite and we have been unable to find a
ruling by the court on the motion to suppress at issue in this point of error. We further note that
the only authority cited by Edwards in either his motion to suppress or in his brief is a federal
statute he concedes is inapplicable in this case. See 18 U.S.C.A. § 3109 (West 1985). Point of
error thirteen is overruled.

Warrant to Obtain Blood Sample

Edwards contends the DNA evidence should have been suppressed because the
warrant authorizing the taking of a sample of his blood was supported by a probable cause
affidavit that incorporated the affidavit underlying the warrant to search his house. Edwards's
argument under this point rests on his contention that the residential search warrant affidavit did
not state probable cause. We have overruled this contention, and therefore we also overrule point
of error ten.


Arrest Warrant

A warrant for Edwards's arrest was issued by a Travis County magistrate on
September 17, 1993. Edwards contends this warrant was not supported by probable cause. We
do not decide this question because Edwards does not contend that any evidence seized pursuant
to his arrest was introduced at trial. An unlawful arrest does not, in itself, require the reversal
of a criminal conviction. See Frisbie v. Collins, 342 U.S. 519, 522 (1952); Stiggers v. State, 506
S.W.2d 609, 611 (Tex. Crim. App. 1974). Point of error fourteen is overruled.


Motion to Quash Indictment

Edwards contends by three points of error that the district court should have
granted his motions to quash the indictment. First, he urges without citation to authority that the
State should have been required to specify in the indictment whether the Dell's habitation was a
structure or a vehicle. See Tex. Penal Code Ann. § 30.01(1) (West 1994) ("'Habitation' means
a structure or vehicle that is adapted for the overnight accommodation of persons . . . ."). 
Edwards does not explain how this alleged notice defect adversely affected his ability to prepare
a defense. See Adams v. State, 707 S.W.2d 900, 903-04 (Tex. Crim. App. 1986). Edwards was
told by the prosecutor at the hearing on the motions to quash that there was no evidence the Dell's
residence was a vehicle, and no issue regarding the nature of the habitation was raised at trial. 
Finding no basis for concluding that Edwards's substantial rights were harmed, we overrule point
of error fifteen.

Next, Edwards complains that, by alleging that he "attempted to commit and
committed theft" after entering the residence, the indictment accused him of two different offenses
in a single count. This contention is meritless. The indictment alleged the single offense of
burglary of a habitation. A person commits this offense if he enters a habitation without the
effective consent of the owner and commits or attempts to commit theft. See Tex. Penal Code
Ann. § 30.02(a)(3) (West 1994). The State may conjunctively allege alternate methods of
committing one offense. See Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991);
and see Marquez v. State, 725 S.W.2d 217, 240 (Tex. Crim. App. 1987) (indictment that alleged
murder in course of committing or attempting to commit aggravated sexual assault alleged single
capital murder offense). Point of error sixteen is overruled.

Finally, Edwards urges that the district court should have quashed the enhancement
paragraph. This paragraph alleged six previous convictions for burglary of a habitation in Harris
and Fort Bend Counties, "which convictions had become final before the commission of the
offense alleged in the preceding paragraph." Edwards complains that the reference to the
"preceding paragraph" was unclear. We disagree. The enhancement allegations were
denominated "paragraph II." Obviously, the preceding paragraph was the paragraph alleging the
primary offense. Edwards further complains that the indictment fails to allege that any one of the
previous convictions was for an offense committed after an earlier conviction became final. This
complaint is premised on the assumption that the State sought to enhance Edwards's punishment
pursuant to Penal Code section 12.42(d). See Tex. Penal Code Ann. § 12.42(d) (West Supp.
1999) (two previous felony convictions). In fact, the State sought and obtained enhancement
pursuant to section 12.42(c). Id. § 12.42(c)(1) (one previous felony conviction). Point of error
seventeen is overruled.


Jury Argument

Edwards complains of jury argument by the prosecutor that he contends was outside
the record. Edwards voiced no objection when the statement was made. Instead, he objected only
after the jury began its deliberations, at which time he asked for a mistrial. By failing to timely
object, Edwards waived any complaint on appeal. See Cockrell v. State, 933 S.W.2d 73, 89 (Tex.
Crim. App. 1996); Tex. R. App. P. 33.1(a)(1). Point of error one is overruled.


Jury Misconduct

In three points of error, Edwards contends the district court erred by overruling
his motion for new trial complaining of jury misconduct. A defendant must be given a new trial
when the jury engages in such misconduct that he did not receive a fair and impartial trial. See
Tex. R. App. P. 21.3(g). The grant or denial of a new trial motion is committed to the discretion
of the trial court. See Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). The court is the
sole judge of the credibility of the witnesses and the weight to give their testimony. Id. The
court's ruling will not be disturbed on appeal unless the decision is shown to be arbitrary or
unreasonable. Id.

The only witness at the new trial hearing was juror Theresa Nash. It is clear from
the record that the district court overruled the motion for new trial because it found Nash's
testimony to be unpersuasive. At the conclusion of the hearing, the district court stated, "[H]er
testimony, at best, is confusing and uncertain, even as to what was her own intent, much less what
the intent of the other 11 people was. And, basically, I can only really base that on her demeanor
and her hesitancy, and in answering the questions and in proffering answers, different answers,
depending upon who was doing the questioning . . . ." We must give "almost total deference"
to the district court's evaluation of Nash's credibility, which is confirmed by our review of the
record. See Quinn v. State, 958 S.W.2d 395, 402 (Tex. Crim. App. 1997). 

Nash's credibility aside, her testimony does not support Edwards's contentions. 
He first complains that the jurors, while deliberating the question of his guilt, violated the
instruction to limit their consideration of the extraneous offenses to the issue of his identity as the
perpetrator of the Dell burglary. Instead, he urges that the jury also considered this evidence as
reflecting his general bad character. Nash testified that the jury "assumed that since he did the
other burglaries, that he must have done this burglary." Viewed in the light most favorable to
the court's ruling, this testimony does not reflect a violation of the limiting instruction. Nash also
testified that other jurors "might have" considered the other burglaries as showing Edwards's
general bad character, but such speculation is not evidence of jury misconduct. Because the jury
was properly authorized to consider the extraneous offenses as evidence of guilt, albeit on the
identity issue only, any consideration of the extraneous offenses as character evidence was
unlikely to have significantly contributed to the jury's guilty verdict and therefore did not deprive
Edwards of a fair and impartial trial.

Edwards also contends the jurors considered the extraneous burglaries in assessing
punishment, even though they had not been introduced for that purpose, and as a result concluded
that he should serve a minimum of fifteen years in prison. Once again, there is no evidence this
occurred. Nash testified only that she "believed" other jurors considered these offenses during
punishment deliberation, and she acknowledged that "[i]t wasn't openly discussed." In any event,
the State alleged and offered proof of six previous felony convictions (including the 1990 Sugar
Land burglary proved at the guilt stage) for enhancement of punishment. The jury found all six
to be true. A minimum punishment of imprisonment for fifteen years therefore was required by
law. See Penal Code § 12.42(c)(1). Under the circumstances, any consideration of the four
unadjudicated burglaries at the punishment stage did not deprive Edwards of a fair and impartial
trial.

Finally, Edwards urges that the jury discussed the law of parole and how it would
apply to him in determining his punishment. Specifically, Edwards contends the jury "took into
consideration through jury discussion the 'one-quarter calendar time' instruction" and "[a]s a
result, the jury determined that the minimum sentence [would be] . . . sixty [sic] years." See Tex.
Code Crim. Proc. Ann. art. 37.07, § 4(b) (West Supp. 1999). Nash's testimony in this regard
was particularly confusing and contradictory. She testified that "we" wanted Edwards to remain
incarcerated for at least seventeen years and, after considering the parole instruction, multiplied
that number by four to arrive at the sixty-eight year term assessed. Elsewhere in her testimony,
however, Nash indicated that she was describing her personal reasoning rather than that of the
jury as a whole. Nash's testimony otherwise reflects that the jurors initially disagreed as to the
proper punishment, that the ultimate punishment decision was a compromise, and that parole was
mentioned during deliberations.

As previously noted, it was the district court's duty to resolve the conflicts and
inconsistencies in Nash's testimony, and we must defer to that resolution. Viewing the record in
the light most favorable to the court's ruling, there is no evidence that any juror relied on a
misstatement of the law asserted as fact by one professing to know the law, and as a result
changed his or her vote to a harsher punishment. See Buentello v. State, 826 S.W.2d 610, 611
(Tex. Crim. App. 1992); Sneed v. State, 670 S.W.2d 262, 266 (Tex. Crim. App. 1984); Valdez
v. State, 893 S.W.2d 721, 724 (Tex. App.--Austin 1995, pet. ref'd).

Edwards has not shown that the district court abused its discretion by overruling
his motion for new trial. Points of error two, three, and four are overruled.


Ineffective Assistance of Counsel

Edwards contends his trial counsel was ineffective in four respects: (1) he failed
to investigate the facts of the case, (2) he failed to discover exculpatory evidence seized from
Edwards's residence, (3) he failed to request an indigency hearing regarding Edwards's ability
to pay for an independent expert "to test the validity of the State's expert" (presumably a
reference to the DNA testimony), and (4) he failed to object to the improper jury argument
discussed above. In reviewing these complaints, we must indulge a strong presumption that
counsel's conduct fell within the wide range of reasonable professional assistance. See Jackson
v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To prevail, Edwards must show that his
attorney made such serious errors that he was not functioning effectively as counsel and that these
errors prejudiced his defense to such a degree that he was deprived of a fair trial. See Strickland
v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 988 S.W.2d 770, 771-72 (Tex. Crim.
App. 1999); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); see also Moore v.
State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); O'Hara v. State, 837 S.W.2d 139, 143
(Tex. App.--Austin 1992, pet. ref'd). 

Edwards raises the ineffectiveness claim for the first time on appeal. As a
consequence there is no evidentiary support for the first three allegations. Specifically, there is
no evidence that trial counsel did not investigate the facts of the case, that undiscovered
exculpatory evidence existed, or that Edwards, who was represented by a retained attorney, was
entitled to an appointed expert. While counsel did fail to timely object to the jury argument, no
attorney is perfect and this single error does not overcome the presumption that counsel provided
reasonable professional assistance. Points of error twenty-two, twenty-three, and twenty-four are
overruled. 


Pro Se Brief

Edwards tendered a pro se supplemental brief. Although an appellant is not entitled
to hybrid representation, we have considered the pro se brief in the interest of justice. See Flores
v. State, 871 S.W.2d 714, 724 (Tex. Crim. App. 1993). For the most part, the pro se brief
elaborates on the arguments made by counsel in the points of error relating to the search of
Edwards's residence. We find nothing in Edwards's discussion that causes us to reconsider our
previous disposition of these points.

The pro se brief also contains a twenty-fifth point of error not raised by counsel. 
In it, Edwards urges that Tanya Williams was an accomplice witness and that the jury should have
been so instructed. A conviction cannot be had on the testimony of an accomplice unless that
testimony is corroborated by other evidence tending to connect the defendant to the offense. Tex.
Code Crim. Proc. Ann. art. 38.14 (West 1979). Edwards contends Williams was an accomplice
as a matter of law because she had been indicted for the offense for which he was on trial. See
East v. State, 702 S.W.2d 606, 616 (Tex. Crim. App. 1985) (co-indictee is accomplice as matter
of law). 

While the record confirms that Williams had been indicted for the Dell burglary,
it further reflects that the indictment against her had been dismissed two years before Edwards's
trial. In Garza v. State, 296 S.W.2d 267 (Tex. Crim. App. 1956), one of the State's witnesses
had been indicted for the same offense for which the defendant was on trial, but the indictment
was dismissed the day trial began. The court held that because of the dismissal, the witness was
not an accomplice as a matter of law. Id. at 269. The court added that the facts of the case did
raise a fact issue as to the witness's status as an accomplice, and that the trial court had properly
instructed the jury on that basis.

In light of Garza, we hold that Williams was not an accomplice as a matter of law. 
Edwards does not refer us to evidence raising a fact issue regarding Williams's status as an
accomplice. Assuming without deciding that a fact issue was raised and that the district court was
obligated to give an accomplice witness instruction, reversible error is not presented. Edwards
did not request such an instruction or object to its absence. Thus, he must demonstrate that he
was egregiously harmed by the absence of the instruction. See Saunders v. State, 817 S.W.2d
688, 692-93 (Tex. Crim. App. 1991); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App.
1985) (op. on reh'g). Edwards acknowledges this burden in his pro se brief, but makes no effort
to meet it. Edwards's possession of property stolen from the Dell residence clearly tended to
connect him to the offense and thus corroborated Williams's testimony. Under the circumstances,
no egregious harm is shown. See Skillern v. State, 890 S.W.2d 849, 874 (Tex. App.--Austin
1994, pet. ref'd). Pro se point of error twenty-five is overruled.

The judgment of conviction is affirmed.



 


 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: October 21, 1999

Do Not Publish
1. Penal code amendments subsequent to the charged offense are irrelevant to this appeal.
2. It appears that Edwards stole address books or, as in this case, organizers, in the course of
his burglaries. In this way, he obtained names, addresses, and telephone numbers of future
burglary victims.
3. Edwards filed thirteen motions to suppress evidence, and obtained three hearings thereon
before two different judges.



ints of error twenty-two, twenty-three, and twenty-four are
overruled. 


Pro Se Brief

Edwards tendered a pro se supplemental brief. Although an appellant is not entitled
to hybrid representation, we have considered the pro se brief in the interest of justice. See Flores
v. State, 871 S.W.2d 714, 724 (Tex. Crim. App. 1993). For the most part, the pro se brief
elaborates on the arguments made by counsel in the points of error relating to the search of
Edwards's residence. We find nothing in Edwards's discussion that causes us to reconsider our
previous disposition of these points.

The pro se brief also con